COMMONWEALTH vs. EFRAIN MATIAS.

No. 01-P-1328.

Worcester. March 5, 2003. - May 30, 2003.

Present: BROWN, GREENBERG, & MASON, JJ.

Further appellate review granted, 439 Mass. 1109 (2003).

*Search and Seizure,* Probable cause, Warrant, Affidavit, Fruits of illegal search.

The judge hearing a motion to suppress evidence garnered as a result of three search warrants properly granted the motion, where the affidavit support- ing the initial warrant, on which the second and third warrants relied, did not contain sufficient information to establish probable cause, in that the information provided by unnamed informants in the affidavit was undated and stale, and there was no basis in the affidavit to conclude that incriminating items contained in trash that was collected by a police officer from the curb outside of the defendant's residence likely came from the defendant's apartment; moreover, without probable cause to search the first location, there was not probable cause to search the second or third location. [232-237] BROWN, J., dissented.

INDICTMENT found and returned in the Superior Court Depart- ment on November 17, 2000.

A pretrial motion to suppress evidence was heard by *Daniel F. Toomey,* J.

An application for leave to prosecute an interlocutory appeal was allowed by *Francis X. Spina,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to this court.

*Timothy J. Smyth,* Assistant District Attorney, for the Commonwealth.

*Vincent F. Ricciardi* for the defendant.

GREENBERG, J. This is an interlocutory appeal from the allow- ance of the defendant's motion to suppress evidence garnered as a result of three search warrants. Holding that the search of two apartments and a storage facility were unlawful by reason of defective warrants, the motion judge suppressed all of the

evidence seized by the police from the three locations. In an unpublished decision, a panel of this court originally reversed the motion judge. See *Commonwealth* v. *Matias*, 56 Mass. App. Ct. 1112 (2002). Pursuant to Mass.R.A.P. 27, 396 Mass. 1218 (1986), the same panel granted a rehearing, and we now affirm.

Here is the salient procedural background. On October 10, 2000, a clerk-magistrate issued a search warrant authorizing the police to search the defendant's apartment on the third floor of the building located at 6 Rockdale Street in the city of Worcester. Material recovered in that search led to two warrants being issued for a second-floor apartment at 2 Rockdale Street and a storage unit leased by the defendant in the town of Shrewsbury. Following these searches, the defendant was charged with possession of marijuana with intent to distribute. G. L. c. 94C, § 32C(*a*).

On June 29, 2001, a nonevidentiary hearing was held in the Superior Court on the defendant's motion to suppress evidence recovered in these searches, which included a rental agreement for the storage facility, three plastic bags containing marijuana, and $279,020 in cash. The motion judge allowed the defendant's motion, finding that the search warrants were issued without probable cause because the information supporting the initial warrant, on which the second and third warrants relied, was stale. On August 21, 2001, a single justice of the Supreme Judicial Court allowed the Commonwealth's request for an interlocutory appeal to this court.

We start with well-recognized principles. To establish probable cause, an affidavit must contain sufficient information to support a disinterested magistrate's determination that the items related to the criminal activity being investigated reasonably may be expected to be found in the place to be searched at the time the warrant issues. See *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983). Under the well-known *Aguilar-Spinelli* standard,

> "if an affidavit is based on information from an unknown informant, the magistrate must 'be informed of (1) some of the underlying circumstances from which the informant concluded that the contraband was where he claimed it

was (the basis of knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was "credible" or his information "reliable" (the veracity test). *Aguilar* v. *Texas*, [378 U.S. 108, 114 (1964)]. If the informant's tip does not satisfy each aspect of the *Aguilar* test, other allegations in the affidavit that corroborate the information could support a finding of probable cause. *Spinelli* v. *United States*, [393 U.S. 410, 415 (1969)].' "

*Commonwealth* v. *Upton*, 394 Mass. 363, 374-375 (1985), quoting from *Commonwealth* v. *Upton*, 390 Mass. 562, 566 (1983), rev'd 466 U.S. 727 (1984).

Portions of the affidavit supporting the initial warrant for 6 Rockdale Street (which we have reprinted as an appendix to the opinion) reveal that an unidentified informant had told the affiant, Officer McGee, that he or she had purchased "pounds of marijuana from Efrain [the defendant] for $800.00." Aside from reciting a phone number that the informant claimed to have called to reach Efrain, no details of this alleged marijuana purchase appear. There is no indication of when, where, or how the informant had purchased the drugs. Officer McGee avers that his conversation with the informant took place "on or about March 27, 2000"; so we infer that the purchase occurred sometime prior to that date (which itself is almost seven months before the warrant issued).

The affidavit also recites information given to Officer McGee by one Sergeant Zona. Another unidentified informant had reported to Zona that the informant had purchased twenty-five pounds of marijuana from the defendant, again without indication of the time, location, or manner of the purchase. The second informant further stated to Sergeant Zona that the defendant was planning to fly to an unspecified location in Arizona to pick up four hundred pounds of marijuana from a trailer in July of 1999. No information appears regarding the accuracy of this statement or how the informant came to know it.

On October 10, 2000, according to his affidavit, Officer McGee collected the trash on the curb outside 6 Rockdale Street and there discovered "a large amount of plastic wrap" that contained marijuana and "numerous large ziplock baggies[,]

some of which contained [marijuana] . . . ." Also confiscated from the trash, Officer McGee averred, "was paperwork in the name []of [the defendant] Efrain Matias of 6 Rockdale [Street,] 3rd floor, Worcester."

The motion judge correctly determined that this affidavit failed to provide probable cause to believe that evidence of drug dealing reasonably could be expected to be found at the defendant's apartment at 6 Rockdale Street on October 10, 2000. Leaving aside the fact that nothing in the two informants' information points to the 6 Rockdale Street address (or anywhere else) as a location for criminal activity, the information provided by the first informant is undated. For all the affidavit declares, the first informant's observations could have been months or even years prior to issuance of the warrant. The first informant's information fails utterly to indicate that drugs reasonably could be expected to be found at 6 Rockdale Street on October 10, 2000. See, e.g., *Commonwealth* v. *Morton*, 26 Mass. App. Ct. 949, 950-952 (1988) (total absence of any indication concerning the time when an informant made observations was fatal to warrant application where no other facts appeared in affidavit to support present probable cause). The proper assumption to be made is that an informant's observations were made on the most remote date described in the affidavit. *Commonwealth* v. *Rodriguez*, 49 Mass. App. Ct. 664, 669 (2000). Even if we were to assume the contrary — that the informant's observation was made immediately prior to the conversation with Officer McGee on March 27, 2000 — that information still would be stale. See *Commonwealth* v. *Javier*, 32 Mass. App. Ct. 988, 988 (1992) ("an observation in June, 1990, would generally not support an application for a search warrant presented to a magistrate in November, 1990"). Here, the informant's conversation with Officer McGee occurred nearly seven months before the warrant was issued.[1]

The second informant's information regarding a drug purchase provides no support for the warrant either because it,

---

[1]For a comprehensive discussion of the rationale for a requirement that an informant's information be accompanied by a statement of when the observations were made, see *Rosencranz* v. *United States*, 356 F.2d 310, 316-318 (1st Cir. 1966).

too, is undated, see *Commonwealth* v. *Morton, supra* at 950-952; and the informant's additional information regarding the Arizona trip is stale because it refers to an event that supposedly occurred over a year prior to the warrant's issuance, see *Commonwealth* v. *Javier, supra* at 988. The information regarding the Arizona trip fails to include any of the underlying circumstances that could show the informant's basis of knowledge, and no corroboration appears in the affidavit to remedy that deficiency.

Police investigation revealing that the defendant's cellular telephone records showed a phone call to Tucson, Arizona, in late January, 2000, and two more calls there in late February, 2000, is unavailing as well. The calls were made six months after the trip to Arizona supposedly had taken place. And nothing suggests that the reported trip there was actually to Tucson where the calls were received. Arizona is a large state with many locations besides Tucson.

The Commonwealth claims that Officer McGee's affidavit includes other evidence of continuing conduct such that any problem with staleness is overcome. More specifically, the Commonwealth argues that the items contained in the trash that was collected from the curb outside 6 Rockdale Street corroborated the two informants' information and also independently indicated that the defendant was engaged in continuing sales of marijuana from his apartment. We disagree. The affidavit supporting the search warrant application states only that a search was made of "the trash on the curb outside 6 Rockdale" and that this search yielded incriminating items, along with "paperwork in the name of [the defendant]." But the building at 6 Rockdale Street has at least three apartment units. There is no indication whether the retrieved items came from a communal receptacle for all units; whether there were multiple cans or bags of trash (and, if so, which cans or bags came from which unit); whether the containers were sealed in any manner; or even whether the paperwork in the defendant's name was retrieved from the same container as the incriminating evidence. There is therefore no basis in the affidavit to conclude that the incriminating items likely came from the defendant's apartment.

There are additional problems with the affidavit's passages

regarding the trash search. First, no indication appears how long the trash might have remained outside 6 Rockdale Street before Officer McGee recovered it. In the absence of any such indication, we may not assume that probable cause, even if once it existed, continued to exist up to the time when Officer McGee applied for the warrant. "[I]t is well settled that narcotics are readily consumed or distributed so that probable cause to search for them rapidly dwindles." *Commonwealth* v. *Rice*, 47 Mass. App. Ct. 586, 590 (1999). Second, where no other facts suggest freshness, a one-time trash pull netting evidence of such perishable contraband is insufficient to establish probable cause. See and compare *Raulerson* v. *State*, 714 So. 2d 536, 537 (Fla. Dist. Ct. App. 1998) (distinguishing a case where evidence discovered from a single trash pull, without anything more, did not establish probable cause from other cases where single trash pulls, accompanied by police surveillance and citizens' reports suggesting a pattern of continuous drug activity, established probable cause).

We recognize that "the affidavit should be read as a whole, not parsed, severed, and subjected to hypercritical analysis." *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992), *S.C.*, 49 Mass. App. Ct. 134 (2000). But the paramount principle remains that probable cause must be shown in the affidavit through sufficient detail of the underlying circumstances "if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police." *Commonwealth* v. *Reddington*, 395 Mass. 315, 325 (1985), quoting from *United States* v. *Ventresca*, 380 U.S. 102, 109 (1965). The affidavit in the instant case did not demonstrate probable cause to search 6 Rockdale Street.

Without probable cause to search that location, there was not probable cause to search either 2 Rockdale Street or the storage unit in Shrewsbury. Those searches were tainted fruits of the illegal search of 6 Rockdale Street. The Commonwealth does not contend otherwise; and, therefore, we deem any argument or claim waived regarding these latter two searches. See, e.g., *Commonwealth* v. *Sullivan*, 435 Mass. 722, 723 n.1 (2002).

The order allowing the defendant's motion to suppress is affirmed.

*So ordered.*

APPENDIX.

The affidavit states, in pertinent part:

"The undersigned on or about March 27, 2000 had conversation with a confidential informant. This confidential informant will be referred to in further paragraphs as CI-1. I have known this person for a short period of time and I know him to be drug dependant [*sic*] using [m]arijuana on a daily basis. During this time . . . CI-1 informed me that he knew this subject by the name Efrain and that he operated a dark blue colored Toyota Camery [*sic*] and gray colored Toyota Rav-4 sport utility vehicle. CI-1 informed me that he/she has purchased pounds of marijuana from Efrain for $800.00. CI-1 stated that he/she had to call Efrain phoning number 874-6972. CI-1 described Efrain as a [H]ispanic male who was approx. 5'6 [*sic*] tall with a medium build who was in his mid to late twenties.

"During this time the undersigned had conversation with Sgt. Tro[o]per Thomas Zona of [t]he Ma. Police CPAC unit. Sgt. Zona informed me that he received information regarding a large scale marijuana supplier from the city of Worcester. Sgt. Zona informed me that he received this information from a confidential informant. Sgt. Zona informed me that his informant purchased 25 pounds of marijuana from a subject he/she knew as Efrain who was from the city of Worcester. Sgt. Zona informed me that his informant stated that in July of 1999 Efrain was to fly to Arizon[a] to pick up 400 pounds of marijuana and drive back to Worcester with the marijuana ina [*sic*] trailer. The informant told Sgt. Zona that Efrain would be going to Logan airport with a 6 figure dollar amount up to and over $100,000 dollars to purchase the marijuana.

"The undersigned supplied Sgt. Zona with the cell phone information supplied to the undersigned by CI-1 (#508-873-1610). Sgt. Zona learned that the cell phone number was from Cellular One and Sgt. Zona [s]ubpoenaed the cell phone tolls and the subscriber information. Sgt. Zona learned that the cell phone came back to a[n] Efrain Matias of 6 Rockdale St., apartment #3, Worcester, Ma., and that his date of birth was 02/12/71, and had a social security number of [ ]. Sgt. Zona also learned that on 01/23/00 a call was made from the cell phone (#508-873-1610) to Tucson Arizona. Sgt. Zona also learned that the cell phone was disconnected and as of 02/29/00 the cell phone number was changed to (508)-335-0020, under Efrain Matias' same information. Sgt. Zona also subpoenaed the tolls for the (508)-335-0020 number and learned that on 02/24/00, two calls were made from the cell phone to Tucson Arizona.

"The undersigned did a registry of Motor Vehicles check of Efrain Matias (D.O.B. 02/12/71) and learned that he had two vehicle[s] under his name, a 1999 gray Toyota Rav-4 sports utility vehicle and a blue Toyota Sedan registered to 6 Rockdale St., apartment #3, Worcester Ma.

"On 10/10/00 the undersigned collect[ed] the trash on the curb outside 6 Rockdale St., Worcester Ma. At this time the undersigned confiscated the fol-

lowing items: The undersigned confiscated a large amount of plastic wrap . . . which contained a[n] herbal substance this officer believe[d] to be marijuana. The undersigned confiscated numerous large ziplock baggies some of which contained an amount of herbal substance which was subsequently sent out to the Univ. of Ma. drug labatory [*sic*]. The analysis indicated this substance was in fact marijuana. The undersigned[,] based on training and experience[,] believe[s] these items are consistent with a subject involved in selling large amounts of marijuana. Also confisctaed [*sic*] from this trash was paperwork in the name iof [*sic*] Efrain Matias of 6 Rockdale 3rd floor, Worcester Ma."

BROWN, J. (dissenting). In addition to the information from an anonymous informant, the affidavit sets out the officer's discovery from the trash search of "numerous large ziplock baggies, some of which contained [marijuana] . . . [and] paper work in the name []of Efrain Matias [the defendant] of 6 Rockdale [Street,] 3rd floor, Worcester." I do not believe this court needs to factor in the other information from the affidavits which the majority deems to be stale. I think that the trash pull in and of itself provides a sufficient basis for a magistrate to find probable cause to issue the initial search warrant. Compare *Commonwealth* v. *Pratt*, 407 Mass. 647, 660 (1990).