COMMONWEALTH *vs.* EFRAIN MATIAS.

Worcester. December 2, 2003. - January 30, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Search and Seizure,* Probable cause, Warrant, Affidavit. *Probable Cause. Constitutional Law,* Search and seizure.

This court concluded that information in an affidavit, derived from a confidential informant, a police officer's independent investigation, and from trash collected outside the defendant's apartment building, provided probable cause to believe that there would be evidence of marijuana selling in the defendant's apartment, as the information from the various sources, when combined, indicated current criminal activity [792-793] and a sufficient nexus between the alleged selling of marijuana and the defendant's apartment [793-795]; likewise, paperwork concerning an apartment in a neighboring building found during the search of the defendant's apartment building, as well as the name on the mailbox of the neighboring apartment building, sufficed to provide probable cause supporting a warrant to search that apartment, and paperwork concerning the rental of a storage unit found during the search of the defendant's apartment building, when combined with information from an employee of the storage unit facility and the results of a "sniff" by narcotics dogs, provided ample probable cause for the issuance of a search warrant untainted by any prior illegal search [795].

INDICTMENT found and returned in the Superior Court Department on November 17, 2000.

A pretrial motion to suppress evidence was heard by *Daniel F. Toomey*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Spina*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Vincent F. Ricciardi* for the defendant.

*Timothy J. Smyth*, Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant, Efrain Matias, was indicted for possession with intent to distribute marijuana. The indictment stemmed from evidence seized during three separate searches, all conducted pursuant to warrants. The three searches were of Matias's apartment, a second apartment in his name, and a storage unit. Matias filed a motion to suppress all evidence seized pursuant to the three search warrants and the motion was allowed by a Superior Court judge. A single justice of this court granted the Commonwealth's request for an interlocutory appeal, see G. L. c. 278, § 28E; Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), and transferred the matter to the Appeals Court. In an order and unpublished memorandum the Appeals Court vacated the order of the motion judge. *Commonwealth* v. *Matias*, 56 Mass. App. Ct. 1112 (2002). However, on rehearing, the Appeals Court affirmed the allowance of the motion to suppress. *Commonwealth* v. *Matias*, 58 Mass. App. Ct. 231, 232 (2003).[1] We granted the Commonwealth's application for further appellate review and, for the reasons explained below, we reverse the order suppressing the evidence.

The validity of the affidavits for the second and third searches turns on the sufficiency of the affidavit for the first search. In regard to the first affidavit, we must resolve two related issues: first, whether the information relied on in the affidavit was "stale" and thus did not establish probable cause to support the issuance of a search warrant; and second, whether the information in that affidavit demonstrated a sufficient nexus between the criminal activity alleged and the place to be searched. We summarize the facts relevant to this appeal from the various affidavits in support of the search warrant applications.

1. *Affidavit for 6 Rockdale Street, third floor.* The affiant, Officer Darnell McGee, had been an officer with the Worcester police department for sixteen years, was a member of the vice squad for ten years, and had participated in several hundred drug investigations. On or about March 27, 2000, Officer McGee spoke with a confidential informant (CI-1) whom he had known for a short period of time and whom he knew to be

---

[1]One member of the panel dissented and would have vacated the motion to suppress. *Commonwealth* v. *Matias*, 58 Mass. App. Ct. 231, 238 (2003) (Brown, J., dissenting).

marijuana dependent. CI-1 informed Officer McGee that he had purchased pounds of marijuana (worth $800) from a Hispanic male named Efrain, whom he contacted by telephoning 874-6972. CI-1 described Efrain as about five feet, six inches tall with a medium build and in his mid-to-late twenties. According to CI-1, Efrain operated two vehicles, a blue Toyota Camry automobile and a gray Toyota Rav-4 sport utility vehicle.

A subpoena of the records for a cellular telephone number (supplied by CI-1) yielded the information that it was registered to Efrain Matias, twenty-nine years old, of 6 Rockdale Street, apartment no. 3, in Worcester. Officer McGee also learned, from the registry of motor vehicles, that Matias had registered both a blue Toyota sedan and a gray Toyota Rav-4 sport utility vehicle at 6 Rockdale Street, apartment no. 3,[2] in Worcester.[3]

On October 10, 2000,[4] Officer McGee "collect[ed]" the trash from the curb outside 6 Rockdale Street (trash pull).[5] He found a large amount of plastic wrap containing an herbal substance he believed to be marijuana. He also recovered many large plastic baggies, some of which contained an herbal substance which was tested and analyzed as marijuana. The officer also located in the trash paperwork in the name of Efrain Matias of 6 Rockdale Street, third floor, Worcester, Massachusetts. Officer McGee believed that this evidence indicated that marijuana was being "kept for sale" at 6 Rockdale Street, third floor. The search warrant was issued on October 10, 2000, and the search

[2]But for the references to "apartment #3" in the telephone and registry records, the affidavit for a search warrant for 6 Rockdale Street refers to the unit to be searched as the "third floor" of that address. The search warrant was also issued for the "third floor." The subsequent affidavits refer to that unit as "apt. #3." As to the significance of the reference to "third floor," see note 9, infra.

[3]The affidavit also contains information from a second informant. The defendant argues that this informant did not meet the Aguilar-Spinelli requirements. See Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964); Commonwealth v. Upton, 394 Mass. 363, 374 (1985). We need not resolve whether the second informant meets these requirements because probable cause is established without that informant's information.

[4]Nothing in the record explains the delay in the investigation between March and October of 2000.

[5]The defendant does not contest the legality of the trash pull. See Commonwealth v. Chappee, 397 Mass. 508, 512-513 (1986).

was executed that evening. As a result of evidence seized in that search, Officer McGee applied for two further search warrants.

2. *Affidavit for 2 Rockdale Street, apartment no. 2.* This affidavit repeated all the information contained in the original affidavit for 6 Rockdale Street, third floor. The affidavit also stated that during the search of 6 Rockdale Street, third floor, the police found and seized marijuana consistent with distribution, "large amounts" of cash (believed to be "tens of thousands of dollars") and "cribnotes" indicating money transfers consistent with drug distribution. The police also found a rent receipt for 2 Rockdale Street, apartment no. 2, and a rental agreement for a storage unit at a storage facility in Shrewsbury, both in the name of Efrain Matias. The rental agreement stated that Matias had rented the unit since March 16, 1999. One of the items recovered in the earlier trash pull was a receipt from the same storage facility in Shrewsbury dated September 28, 2000.[6] The receipt indicated that Matias's unit was ID:E200 and that he had paid for the unit until November 1, 2000.

During the search, a representative of the landlord for both 2 Rockdale Street and 6 Rockdale Street told the police of heavy foot and vehicle traffic at both these apartments, and that Matias rented both of them and was seen going "back and forth" between them. In addition, the police observed that the mailbox for 2 Rockdale Street, apartment no. 2, bore the name "E. Matias" (and another name). In Officer McGee's experience, it is common for large scale drug dealers to have "stash apartments," where "drugs or moneys are kept secreted" to avoid detection by police and theft by rival drug dealers.[7] As a result of the above information, Officer McGee received a second search warrant, for 2 Rockdale Street, apartment no. 2. Pursuant to this warrant, the police searched 2 Rockdale Street, apartment no. 2, and found further evidence of drug distribution.

3. *Affidavit for the storage unit.* The third affidavit repeated all the information contained in the original affidavit for 6 Rock-

---

[6]Although the rental receipt was recovered in the earlier trash pull, it was not referenced in the affidavit for 6 Rockdale Street, third floor.

[7]Again, although the affidavit could be clearer, the inference is that 2 Rockdale Street, apartment no. 2, is the "stash apartment."

dale Street, third floor. It also reported the results of the first search, including the recovery of the rental agreement for the storage unit, and the rental receipt found during the trash pull. In addition, it recited that the Shrewsbury police had been contacted and had gone to the storage facility in that town. Employees at that facility told the police that their records showed that Matias rented unit space E200 and had visited the unit 143 times since March of the previous year. The police brought two canines, both trained and certified for narcotics detection, to the storage facility. Both dogs previously had located numerous "finds" of marijuana and other drugs. After sniffing at the doors of approximately twenty storage sheds, the dogs indicated, by scratching and jumping at the door, that narcotics were present in Matias's unit. Based on this information, Officer McGee applied for and received a third search warrant for the storage unit. Pursuant to this warrant, the police searched the storage unit within a few hours after the search of 6 Rockdale Street, third floor. In the storage unit, the police found, among other items, over $87,000 in a backpack.

The judge's primary reason for allowing the motion to suppress was the staleness of the information in the original affidavit. Because CI-1's information was at least six months old when the warrants were issued, the judge concluded that it was stale and could not support a determination of probable cause. The judge also noted that the search of the trash, even if sufficiently linked to "the locus," did not remedy the staleness problem. Thus, the judge wrote, the first warrant was issued without probable cause and the evidence seized at 6 Rockdale Street, third floor, was to be suppressed. Because the second search warrant, for 2 Rockdale Street, apartment no. 2, depended on information derived from this first search (the rent receipt), as well as the information from an unidentified representative of the landlord who was not shown to meet the *Aguilar-Spinelli* standards, the results of the second search were also suppressed. The judge further concluded that, although the canine sniff alone would have provided probable cause for a warrant to search the storage unit, the police never would have focused on the unit but for the paperwork found at 6 Rockdale Street, apartment no. 3. Accordingly, the results of the third search

were suppressed as fruit of the poisonous tree. See *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963).

To establish probable cause, "[a]n affidavit must contain enough information for an issuing magistrate to determine that the items sought are related to the criminal activity under investigation, and that they reasonably may be expected to be located in the place to be searched at the time the search warrant issues." *Commonwealth* v. *Cruz*, 430 Mass. 838, 840 (2000), quoting *Commonwealth* v. *Cinelli*, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983).

The Commonwealth argues that the judge improperly allowed the defendant's motion to suppress because the affidavit contained adequate information to determine that the illegal activity was current and that it was connected to the apartment to be searched, and thus satisfied constitutional and statutory requirements. We conclude that both the staleness and nexus problems are resolved by the information from CI-1, the officer's independent investigation, and the trash pull. The information derived from these various sources, when combined, satisfies both the requirement of current evidence of criminal activity and the requirement that there be evidence connecting such criminal activity to the place to be searched. Accordingly, there was probable cause to believe that there would be evidence of marijuana selling in the defendant's apartment.

The defendant contends, and the motion judge determined, that CI-1's tip was stale and therefore insufficient to establish probable cause. "Facts supporting probable cause must be 'closely related to the time of the issue of the warrant [so] as to justify a finding of probable cause at that time.' " *Commonwealth* v. *Cruz, supra* at 843, quoting *Sgro* v. *United States*, 287 U.S. 206, 210 (1932). Because narcotics are "readily consumed or distributed," in some circumstances "probable cause to search for them rapidly dwindles" with the passage of time. *Commonwealth* v. *Matias*, 58 Mass. App. Ct. 231, 236 (2003), quoting *Commonwealth* v. *Rice*, 47 Mass. App. Ct. 586, 590 (1999). See *Commonwealth* v. *Vynorius*, 369 Mass. 17, 25 (1975). Therefore, a tip from an informant several months before a search cannot establish probable cause when the tip refers to an isolated drug transaction, and no other reliable evidence has

been received in the interim. See, e.g., *Commonwealth* v. *Reddington*, 395 Mass. 315, 322-323 (1985). However, if the "affidavit recite[d] activity indicating protracted or continuous conduct, time is of less significance." *Commonwealth* v. *Cruz, supra*, quoting *Commonwealth* v. *Vynorius, supra*. When information indicates such protracted or continuous activity, the older information remains relevant, even though that information viewed in isolation may have been too old to provide a substantial basis to conclude that the items in question were still likely to be found on the premises to be searched. See, e.g., *Commonwealth* v. *Alvarez*, 422 Mass. 198, 205 (1996); *Commonwealth* v. *Spano*, 414 Mass. 178, 184-185 (1993).

Here, the trash pull conducted on October 10, 2000, the day the affidavit was submitted, revealed evidence "consistent with a subject involved in selling large amounts of marijuana"; the inference is justified, therefore, that the drug dealing activity in March was a "protracted or continuous" activity that was still ongoing in October. See *Commonwealth* v. *Cruz, supra* at 843; *Commonwealth* v. *Reddington, supra* at 323, quoting *United States* v. *Harris*, 482 F.2d 1115, 1119 (3d Cir. 1973) ("Protracted and continuous activity is inherent in a large-scale narcotics operation").[8] See, e.g., *United States* v. *Coleman*, 149 F.3d 674, 677-678 (7th Cir. 1998) (trash pull one day before issuance of search warrant coupled with informant tips and other information six months old and older provided probable cause for search); *Commonwealth* v. *Misci*, 358 Mass. 804 (1970) (five month old information coupled with informant's tip given in same week that search warrant issued sufficient for probable cause); *Commonwealth* v. *Luce*, 34 Mass. App. Ct. 105, 109 (1993) (in context of continuous drug distribution, recent information from informant "freshened" stale tip provided six months earlier).

The defendant also argues that the trash pull on the curb outside 6 Rockdale Street provided no basis for probable cause

---

[8]The Appeals Court noted that there was "no indication . . . how long the trash might have remained outside 6 Rockdale Street before Officer McGee recovered it." *Commonwealth* v. *Matias*, 58 Mass. App. Ct. 231, 236 (2003). While this concern is not irrelevant, it is a reasonable inference that ordinarily trash would not be sitting on a sidewalk for an extended period of time in a large modern city.

to search the third-floor apartment of that building, because there was an insufficient nexus between the illegal activity and the apartment.[9] The Appeals Court agreed, noting that there was no indication whether the trash from the different apartments in the building was kept separate or commingled, whether the paperwork bearing Matias's name was found in the same receptacle as the "herbal substance," or whether the trash containers were sealed to prevent others from using them. *Commonwealth v. Matias, supra* at 235. Therefore, the court stated, there was "no basis in the affidavit to conclude that the incriminating items likely came from the defendant's apartment." *Id.* These three arguments posit a standard of proof higher than what we require for the issuance of search warrants.

Our cases have required that probable cause to believe evidence of criminal activity will be found in a particular place must be demonstrated by a "nexus" between the crime alleged and the place to be searched. *Commonwealth v. Jean-Charles*, 398 Mass. 752, 757 (1986). However, in order to find this nexus we look at all the allegations in the affidavit as a whole in a commonsense fashion, not at individual fragments. *Commonwealth v. Atchue*, 393 Mass. 343, 346-349 (1984). The nexus "need not be based on direct observation." *Commonwealth v. Cinelli*, 389 Mass. 197, 213 (1983). It may be found in the type of crime, the nature of the items sought, and normal inferences as to where such items might be kept by the suspect. *Id.* See *Commonwealth v. Vynorius, supra* at 22-23 (upholding validity of search warrant for marijuana where no informant had actually seen drugs inside premises).

In this case, an informant (whose reliability is not challenged) told Officer McGee of an "Efrain" who was selling marijuana in the area. It is true that the informant did not state where he or she had purchased the drugs from Efrain. However, based on this information, Officer McGee conducted an independent investigation that revealed the defendant's full name and the

---

[9]The inference from the first affidavit's use of the phrase "third floor" is that the building is one with a limited number of units in it. While it is conceivable that the marijuana found in the trash outside the building might have come from another apartment or floor (or from elsewhere), this possibility does not render the issuance of the search warrant improper. We are dealing only with probable cause. *Commonwealth v. Vynorius*, 369 Mass. 17 (1975).

fact that he resided at 6 Rockdale Street, third floor. Subsequently, the officer found drugs, along with papers bearing the defendant's name and address, outside the building on the day of the search. It is possible that the source of those drugs was other apartments in the building or passersby. Notwithstanding that possibility, a logical reading of the affidavit indicates sufficient information to establish probable cause to search 6 Rockdale Street, third floor.

The validity of the warrants for 2 Rockdale Street, apartment no. 2, and for the storage unit, are dependent on the validity of the warrant for 6 Rockdale Street, third floor. As to the search warrant for 2 Rockdale Street, apartment no. 2, the paperwork for that apartment found during the search of 6 Rockdale Street and the name on the mailbox were sufficient to provide probable cause.[10] Given the proximity between the buildings, it was reasonable to infer that 2 Rockdale Street, apartment no. 2, was a "stash" apartment. The affidavit for the search warrant for the storage unit recited the discovery of the receipt for the unit in the trash, the rental agreement found during the search of 6 Rockdale Street, the information from the storage facility employee, as well as the results of the canine sniff. This information provided ample probable cause for the issuance of the warrant, and it was untainted by any prior illegal search. See *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963).

The allowance of the motion to suppress is vacated and an order denying the motion is to enter. This case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[10]The motion judge determined that the information from the unidentified representative of the O.S. Walker Co., the owner of both 2 Rockdale Street and 6 Rockdale Street, was not "reliable or fact-based." We conclude that there was probable cause to search 2 Rockdale Street, apartment no. 2, even without this information. However, we note that where the informant's position and company were identified in the affidavit, the mere fact that the individual was not named did not render him a " 'faceless informer' whose unarticulated self-interest would render his information automatically suspect." *Commonwealth* v. *Atchue*, 393 Mass. 343, 347 (1984).