SUPERIOR COURT 
 
 COMMONWEALTH vs. RAFAEL MANZUETA

 
 Docket:
 1981CR0335
 
 
 Dates:
 December 6, 2022
 
 
 Present:
 David A. Deakin
 
 
 County:
 MIDDLESEX
 

 
 Keywords:
 MEMORANDUM AND ORDER ON DEFENDANT’S MOTIONS TO SUPPRESS
 
 

             The defendant, Rafael Manzueta, is charged by indictment with trafficking in two-hundred grams or more of cocaine, in violation of G. L. c. 94C, § 32E(b)(4), and conspiracy to violate the drug laws, in violation of G. L. c. 94C, § 40. In a series of motions to suppress, Manzueta seeks to exclude evidence seized during the June 18, 2019, search of the residence at 64 Richardson Street, Apartment 17, in Lowell, which was conducted pursuant to an anticipatory search warrant. Manzueta also contends that the ensuing search of his person incident to his arrest must be suppressed as fruit  of the purportedly unconstitutional search of the residence. Finally, Manzueta also seeks the suppression of any statements that he allegedly made during and after the search of the residence as fruits of that allegedly impermissible search.
            The defendant advances three arguments in support of his claims for suppression. First, he argues that, even assuming that the events triggering the
 
                                                            -1-
 
anticipatory search warrant occurred – a proposition that he disputes – the search warrant did not establish probable cause to believe that cocaine would be found in the residence. Second, Manzueta contends that, in any event, the triggering condition did not occur, rendering the search warrant invalid. Finally, he argues that, in executing the search warrant, police exceeded its scope. Because the defendant’s claims are unpersuasive, his several motions to suppress are DENIED.
BACKGROUND[1]
The Anticipatory Search Warrant
            Beginning in 2018, Massachusetts law enforcement officials investigated reports that Joseph Alicea was overseeing a cocaine trafficking enterprise from his home in Lowell. The investigation apparently grew out of a 2017 investigation by the New
 
--------------------------------------------
 
[1] The facts set out in this section are taken from the July 12, 2022, hearing testimony of Detective Jason Burd, which I credit, and the Affidavit in Support of an Application for a Search Warrants [sic] (“Affidavit”), authored by Detective Burd and Trooper Cain, which appears at pages 8-26 of the Commonwealth’s Record Appendix in Support of its Opposition to Defendant’s Motions to Suppress Search Warrant Pursuant to Warrant 1911SW9980 (Papers #18, #20, #21) (“Record Appendix”). References to Detective Burd’s hearing testimony are denoted by the abbreviation, “Hrng. Test.” The Affidavit incorporated by reference four other affidavits in support of search warrants issued earlier in the investigation. References to the Affidavit are denoted by the abbreviation, “Aff.,” followed by page and paragraph number citations. The pages refer to the pages in the original affidavit, not the independent page numbers in the record appendix. References to earlier affidavits – incorporated by reference into the Affidavit in support of the search warrant at issue – are denoted by the abbreviation, “Aff.,” followed by the date of the affidavit and page and paragraph citations. Here again, the page numbers refer to the page(s) in the original affidavit, not the independent page numbers in the record appendix. Additional facts are set out in the Analysis section as necessary for context.
 
                                                            -2-
 
Hampshire State Police of narcotics trafficking in that state. Throughout 2017, New Hampshire State Troopers had conducted controlled purchases of narcotics from Alicea. The 2017 New Hampshire investigation resulted in Alicea’s 2017 indictment in Essex County for trafficking in ten grams or more of fentanyl. See Commonwealth v. Alicea, 1777CR0054. Alicea pleaded guilty to that charge on December 12, 2017, and, in January 2018, was sentenced to one year to eighteen months in state prison (see 1777CR054).
            The Affidavit challenged in Manzueta’s several motions to suppress alleges that Alicea continued to conduct his narcotics distribution enterprise from a prison cell. Upon his release from incarceration, law enforcement officials surveilled Alicea and, between January and May 2019, conducted six controlled purchases of cocaine from him.[2]
            On Friday afternoon, June 14, 2019, law enforcement officials monitoring a wiretap of Alicea’s cellular telephone overheard a conversation between him and a then-unidentified man, soon after identified as Manzueta. Over the course of that afternoon and evening, police listened in on a series of conversations between Alicea and Manzueta discussing the latter’s proposed purchase of 100 grams of cocaine from the former. Later that evening, police watching Alicea’s residence at 850 Lakeview
 
--------------------------------------------
 
[2] The progress of the investigation is set out in the affidavit of Massachusetts State Police Troopers Danab A. Shea and Brendan E. Cain submitted on May 23, 2019, in support of an application for a warrant to install a tracking device on a Honda Pilot. Aff. 05/23/2019. Because Manzueta raises no claim regarding the sufficiency of the evidence to establish probable cause to believe that Alicea dealt in cocaine, I need not set out the substance of that evidence.
 
                                                            -3-
 
Avenue in Lowell saw a Mazda CX9 automobile – later linked to Manzueta – pull in next to Alicea’s residence. An unknown person emerged from Alicea’s residence and walked to the passenger side of the Mazda. The figure remained beside the Mazda for roughly twenty seconds before returning to Alicea’s residence.
            The Mazda then drove away, followed by police surveillance. Officers watched the Mazda – which was registered to an owner (not Manzueta) living at 64 Richardson Street, Apartment 17, in Lowell – as it drove for some distance before pulling next to a pickup truck. Police were unable to stop to determine whether the driver of the Mazda interacted with anyone in the pickup truck. Surveillance officers were able to look at the driver of the Mazda, whom they later identified as Manzueta by referring to his driver’s license photograph. Shortly thereafter, police drove to 64 Richardson Street and found the Mazda parked in the lot there.
            Two days later, on June 16, 2019, police overheard another call from Alicea to Manzueta. In the conversation, the two men discussed a sale of between 250 and 300 grams of cocaine. The following day, police heard Alicea and Manzueta discussing a sale of a slightly reduced amount of cocaine. The sale was to take place the next day, June 18, 2019, at Alicea’s residence.
            In anticipation of the sale that day, Troopers Shea and Cain on June 18, 2019, applied for, and obtained, an anticipatory warrant to search the residence at 64 Richardson Street, as well as Manzueta’s automobile and person. The affidavit set out,
 
                                                            -4-
 
as the “triggering condition . . . wiretap or visual surveillance of Manzueta visiting Alicea at Alicea’s home . . . in Lowell, followed by Manzueta departing that location and returning to 64 Richardson Street #17, Lowell, MA.” Aff. at 13, ¶ 30.
            At approximately 7:34 p.m. that evening, law enforcement officials monitored a call from Alicea to Manzueta. In the conversation, Alicea asked Manzueta, “[y]ou wanna come through and grab that?” Manzueta responded that he did and that he would “be . . . there” in approximately fifteen minutes. Twenty minutes later, police overheard a second telephone conversation in which Manzueta told Alicea that he was “in the back.” Alicea responded by inviting Manzueta to “come up.” At 7:56 p.m., police saw – and photographed – Manzueta entering Alicea’s residence. He was in the building only very briefly before re-emerging, getting back into his car, and driving away.
            Trooper Danab Shea followed Manzueta as he drove in the Mazda “directly back [from Alicea’s residence] to 64 Richardson Street.” Hrng. Test. The distance between the two residences is between one eighth and one quarter of a mile and is roughly a two- minute drive. Police watching images from a pole camera erected outside 64 Richardson Street confirmed that Manzueta arrived in his car at 64 Richardson Street just a very few minutes after leaving Alicea’s residence. Manzueta was wearing a distinct, “bright, fluorescent windbreaker jacket.” Hrng. Test. He was neither carrying anything nor wearing a backpack when he went into the residence. At approximately 8:10 p.m. – just
 
                                                            -5-
 
a few minutes after he arrived at 64 Richardson Street and at a time when his car was still parked outside – Manzueta called Alicea. In the conversation, which police overheard, Manzueta called to inquire as to why Manzueta had sold him 222 grams of cocaine, instead of the promised 250 grams. Manzueta also told Alicea that the cocaine “[s]mells like – like that outdoor sh_t.”
The Execution of the Anticipatory Warrant
            Concluding that the triggering condition had occurred, law enforcement officials executed the search warrant. Within a very short time of Manzueta’s return to 64 Richardson Street, ten or twelve officers gathered at the residence. They knocked and announced their presence and their purpose to execute the search warrant. Detective Justin Velez, who was closest to the door, heard sounds of rummaging from within the apartment, but no one answered. After one or two minutes, police forced the door using a battering ram. When the police entered, they saw Manzueta in the hallway. When he saw Detective Velez, the first law enforcement official into the apartment, Manzueta moved to the bathroom. Police apprehended him as he tried to flush a plastic bag of oxycodone pills down the toilet. They handcuffed Manzueta and took him to the back bedroom. There, they advised him pursuant to Miranda v. Arizona, 384 U.S. 436 (1966) and gave him a copy of the search warrant. Manzueta told police that he had no cocaine but that he had marijuana. He pointed to a backpack, which, he indicated, contained the marijuana.
 
                                                            -6-
 
            During the search, police found in a backpack: crack cocaine, methamphetamine pills, suboxone film strips, MDMA (commonly known as Ecstasy), and marijuana. Police also found a large amount of cash and a digital scale. Most significantly, police found approximately 100 grams of cocaine in the distinctive windbreaker that Manzueta had worn into the residence minutes before.
Procedural History
            The defendant was arrested in his residence by police executing the warrant. The grand jury returned the indictment in this case on August 23, 2019, and Manzueta was arraigned on September 17, 2019. On December 11, 2020, Manzueta filed a Motion to Dismiss (Paper No. 16), which was denied on August 12, 2021, after hearing on June 28, 2021. On January 6, 2021, Manzueta filed three related motions to suppress: a Motion to Suppress Warrantless Search and Seizure (Paper No. 18); a Motion to Suppress Warrantless Search of 64 Richardson Street Apartment 17 Residence (Paper No. 20); and a Motion to Suppress Evidence from an Invalid Search Warrant (Paper No. 21). I conducted a hearing on all three motions on July 12, 2022, and heard argument on August 18, 2022.
ANALYSIS
            In reviewing a motion to suppress evidence gathered pursuant to a search warrant, the court must determine whether the warrant was supported by probable cause. See Commonwealth v. Perkins, 478 Mass. 97, 102 (2017), citing Commonwealth v.
                                                            -7-
 
Valerio, 449 Mass. 562, 566 (2007). That determination is made from the “four corners of the [search warrant] affidavit.” Id. (brackets in original), quoting Commonwealth v. O’Day, 440 Mass. 296, 297 (2003). “To establish probable cause, the facts . . . in the warrant affidavit, and the reasonable inferences drawn from them, must be sufficient for the issuing judge to conclude that the police seek items related to criminal activity and that the items described ‘reasonably may be expected to be located in the place to be searched at the time the warrant issues.’” Id., quoting Commonwealth v. Walker, 438 Mass. 246, 249 (2002). In evaluating an affidavit in support of an application for a search warrant, a magistrate may draw reasonable inferences from the facts set out therein. See O’Day, 440 Mass. at 297. Affidavits supporting search warrant applications are reviewed “as a whole and in a commonsense and realistic fashion ” Commonwealth v. Dorelas, 473 Mass. 496, 501 (2016), quoting Commonwealth v. Cavitt, 460 Mass. 617, 626 (2011). They are not to be “parsed, severed, and subjected to hypercritical analysis.” Id., quoting Commonwealth v. Donahue, 430 Mass. 710, 712 (2000). As the Supreme Judicial Court observed in Commonwealth v. Anthony,
In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.
451 Mass. 59, 68 (2008).
            Police may seek an anticipatory warrant to search a location. Commonwealth v. Colondres, 471 Mass. 192, 196 (2015), citing, inter alia, Commonwealth v. Staines, 441 Mass. 
 
                                                            -8-
 
521, 525 (2004). “An anticipatory warrant, by definition, is a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises . . . .” Id., quoting United States v. Garcia, 882 F.2d 699, 702 (2nd Cir.), cert. denied sub nom. Grant v. United States, 493 U.S. 943 (1949). For an  anticipatory warrant to establish probable cause to search, “the so-called ‘triggering condition’” set out in the affidavit must first occur. Id., citing United States v. Grubbs, 547 U.S. 90, 94 (2006).
I. The Warrant to Search the Residence at 64 Richardson Street, Apartment 17
            A. Probable Cause
            Manzueta bases his claim for suppression on the proposition that probable cause to believe that someone is distributing narcotics does not, standing alone, establish probable cause to search the person’s home. See Commonwealth v. Dillon, 79 Mass. App. Ct. 290, 294 (2011) (“Probable cause to expect that drugs will be present in a home is not established by the fact that the defendant [who is plausibly suspected of drug-dealing] lives there.”), quoting Commonwealth v. Pina, 453 Mass. 438, 441 (2009); see also Perkins, 478 Mass. at 104 (“Information establishing that a person is guilty of a crime does not necessarily constitute probable cause to search the person’s residence.”), quoting Commonwealth v. Cinelli, 389 Mass. 197, 213 (1983). Instead, “[t]o establish probable cause to search an individual’s house, the search warrant must establish a ‘substantial basis for concluding that evidence connected to the crime will be found on the specified
 
                                                            -9-
 
premises.’” Perkins, 478 Mass. at 104, quoting Commonwealth v. Tapia, 463 Mass. 721, 726 (2012). “The nexus between the crime alleged and the place to be searched ‘need not be based on direct observation.’” Id., quoting Commonwealth v. Matias, 440 Mass. 787, 794 (2004). Rather, the nexus “may be found in the type of crime, the nature of the . . . items [sought], the extent of the suspect’s opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [items of the sort sought].” Id., quoting Cinelli, 389 Mass at 213.
            At the heart of Manzueta’s argument for suppression is his claim that the anticipatory warrant did not establish a nexus between his alleged drug distribution and his apartment.[3] Manzueta maintains that – even assuming that the triggering condition occurred (but see Section I, B, infra) – police lacked sufficient probable cause to search his home for evidence of cocaine trafficking. This argument is unpersuasive.
 
--------------------------------------------
 
[3] As a threshold matter, Manzueta contends that the Affidavit in support of the search warrant affidavit does not establish probable cause to believe that the apartment searched was his residence. This argument is unpersuasive. The Affidavit set out that, on June 14, 2019, detectives had listened in on a telephone conversation between Alicea and a man later identified as Manzueta. Aff. at 7-10, ¶¶ 14-21. In the conversation, the two men discussed a drug transaction to be conducted that evening at Alicea’s home. Id. Detectives then watched as a Mazda CX9 automobile pulled up to Alicea’s home. Id. at 10, ¶¶ 21-22. An “unknown figure emerged from the side of . . . [Alicea’s home] and approached the passenger side of the Mazda.” Id. at 10, ¶ 22. The unknown figure remained at the side of the Mazda for a few seconds, and then the Mazda was driven away. Id. The Mazda was registered to an owner residing at 64 Richardson Street, Apartment 17, id. at 10-11, ¶ 23, which is where detectives saw it parked shortly after the visit to Alicea’s apartment. Id. at 11, ¶ 23. Subsequent Bureau of Probation (“BOP”) and Registry of Motor Vehicles (“RMV”) checks established both that Manzueta had driven the Mazda and listed his home address as 64 Richardson Street, Apartment 17. Id. at 11, ¶¶ 23-24.
 
                                                            -10-
 
The affidavit in support of the search warrant application established probable cause to believe that Manzueta – who had discussed a significant purchase of cocaine with Alicea in telephone conversations leading up to, and on, June 18, 2019 – bought cocaine when he visited Alicea’s home that evening. The evidence strongly suggests that Manzueta then brought the cocaine – as well as the cellular telephone that he had used to arrange the purchase – home with him to 64 Richardson Street. There is, therefore, no basis for suppression of evidence seized during the execution of the search warrant there.
            The affidavit established ample probable cause to believe that Alicea distributed cocaine and that, in the days leading up to the search of Manzueta’s home, the two men discussed a purchase of between 250 and 300 grams of cocaine. Further, after a second telephone conversation in the evening of June 18, 2019, about a sale of cocaine later that evening, Manzueta drove to Alicea’s home and went inside. He remained in Alicea’s home for a very short time, after which he re-emerged, got into his car, and drove directly to 64 Richardson Street. He arrived there within minutes. He went inside and called Alicea to discuss why he had been given only 222 grams of cocaine, rather than the 250 grams upon which they had agreed. These undisputed facts establish that the triggering condition set out in the warrant occurred and, therefore, there was probable cause to search Manzueta’s home for the cocaine and the cellular telephone that he used to arrange the suspected transaction.
 
                                                            -11-
 
            Implicitly acknowledging that it had not established a nexus between Manzueta’s suspected drug distribution and his residence when the warrant issued, the Commonwealth obtained an anticipatory warrant. The triggering condition required that Manzueta travel to Alicea’s residence – presumably to purchase a significant quantity of cocaine – and then return to his home.[4] Once Manzueta followed this path – as the testimony established that he did – police had probable cause to believe that he would take both the cocaine and the cellular telephone that he used to set up the purchase with him into his home.
            Manzueta contends that the Commonwealth’s evidence failed to exclude the possibility that – even if he went straight from Alicea’s home to the residence at 64 Richardson Street – Manzueta might have left the cocaine behind in his automobile. Manzueta notes, in this context, that Detective Burd conceded that the pole camera footage revealed that Manzueta did not appear to be carrying anything as he went from
 
--------------------------------------------
 
[4] The language establishing the triggering condition was not drafted terribly precisely. It provided that the warrant would become effective upon Manzueta’s visit to Alicea’s home, “followed by Manzueta departing that location and returning to 64 Richardson Street #17, Lowell, MA.” Aff. at 13, ¶ 30. Read strictly, the anticipatory warrant could be triggered if Manzueta returned to the target residence anytime after leaving Alicea’s home. So construed, the triggering condition clearly would be far too broad to be effective in establishing probable cause to believe that the cocaine that Manzueta presumably purchased from Alicea would be found at Manzueta’s home. Such a reading, however, would violate the injunction against subjecting warrants “to hypercritical analysis.” Dorelas, 473 Mass. at 501, quoting Donahue, 430 Mass. at 712. Read “in a commonsense . . . fashion,” Id., quoting Cavitt, 460 Mass. at 626, the triggering condition clearly was satisfied if Manzueta traveled directly from Alicea’s home to 64 Richardson Street.
 
                                                            -12-
 
his automobile into 64 Richardson Street. Thus, he contends, the search warrant, even with the occurrence of the triggering condition, failed to establish probable cause to search his home.
            This argument fails to persuade because it ignores that “[a] warrant application ‘need not establish to a certainty that the items to be seized will be found in the specified location, nor exclude any and all possibility that the items might be found elsewhere.’” Commonwealth v. Escalera, 462 Mass. 636, 646 (2012), quoting, inter alia, Commonwealth v. Young, 77 Mass. App. Ct. 381, 336 (2010). I need not assess the likelihood – or, more accurately, unlikelihood – of a drug dealer leaving a quantity of cocaine sufficient to satisfy the requirements of the trafficking statute unattended in an automobile. That is because, as the SJC observed in Escalera, “[t]hat evidence of the defendant’s drug sales might also have been found in the defendant’s vehicle does not detract from the conclusion that there was probable cause to search [his] . . . apartment.” 462 Mass. at 646.
            Finally, Manzueta relies, unavailingly, upon cases establishing that probable cause to believe that an individual is involved in narcotics distribution does not, standing alone, establish probable cause to search the individual’s home. For example, in perhaps the strongest case for Manzueta, Commonwealth v. Smith, 57 Mass. App. Ct. 907, 908 (2003), the Appeals Court held that evidence that the defendant drove from his home to one of five controlled purchases of drugs and returned to his home from
 
                                                            -13-
 
another was insufficient to establish probable cause to believe that drugs would be found there.[5] In Smith, the Appeals Court explained that “[t]he ‘fundamental flaw’ in  the affidavit . . . is that it does not explain why there was probable cause to believe that drugs or related evidence would be found at 42 Short Way other than it being the residence of the defendant.” Smith, 57 Mass. App. Ct. 907, quoting Commonwealth v. Chongarlides, 52 Mass. App. Ct. 366, 370 (2001). In this case, by contrast, there is powerful recorded evidence that Manzueta purchased more than two hundred grams of cocaine from Alicea at his residence and then returned directly to his home. It is this information that distinguishes this case from Smith and its progeny.
            B. The Occurrence of the Triggering Condition
            In a secondary argument, Manzueta contends that the evidence at the hearing on the Motion to Suppress did not establish that the triggering condition had occurred. Specifically, Manzueta contends that the evidence did not establish that he went directly from Alicea’s home to the apartment at 64 Richardson Street.[6] Manzueta argues that there was no testimony from any officer to the effect that, after leaving Alicea’s home, Manzueta travelled to 64 Richardson Street without any intervening stops. Thus,
 
--------------------------------------------
 
[5] In a subsequent rescript opinion, a panel of the Appeals Court observed that it had “doubt that Commonwealth v. Smith . . . upon which the motion judge heavily relied, has much vitality, if any, after the decision in Commonwealth v. Escalera, . . . [462 Mass. 636 (2012)].” Commonwealth v. Sanders, 92 Mass. App. Ct. 1122 (2018) (citation omitted).
[6] See Note, 4, supra.
 
                                                            -14-
 
Manzueta argues, the Commonwealth has failed to prove that the triggering event occurred, justifying the search.[7] This argument, too, is unpersuasive.
            Detective Burd testified – without objection – that Trooper Shea followed Manzueta as he drove from Alicea’s home “directly back to 64 Richardson Street.” Hrng. Test. Because I credit this testimony, it is sufficient to establish the occurrence of the triggering condition, as I have construed it. See Note 4, supra. Moreover, additional evidence corroborates Detective Burd’s accounts of Trooper Shea’s surveillance.
            The testimony at the hearing established that, at 7:56 p.m. on June 18, 2019, police saw – and photographed – Manzueta entering Alicea’s residence. He was in Alicea’s home only briefly before re-emerging, getting back into his car, and driving away. Detective Burd testified that the drive from Alicea’s residence to 64 Richardson Street – between one eighth and one quarter of a mile – usually required roughly two minutes. Police watching images from a pole camera erected outside 64 Richardson Street confirmed that Manzueta arrived in his car at 64 Richardson Street minutes after
 
--------------------------------------------
 
[7] There appears to be a dearth of authority – in the Commonwealth or anywhere else – on the burden of proof associated with establishing the occurrence of the triggering event. As a (now-retired) colleague did in Commonwealth v. Banks, 2006WL2660630 (Superior Court) (Lu, J.), I “assume[] that the Commonwealth has the burden of proving that the triggering event  . . . occurred.” The Supreme Judicial Court confronted a related question in Colondres, when it concluded that compliance with the triggering condition in an anticipatory warrant required only “equivalent compliance,” rather than “strict compliance.” 471 Mass. at 198. In that context, the SJC held that, “[t]he Commonwealth bears the burden of proving that the conditions that actually gave rise to the search were as or more likely to establish probable cause as the triggering conditions stated in the affidavit.”
 
                                                            -15-
 
leaving Alicea’s residence. He was not carrying anything when he went into the residence. At approximately 8:10 p.m. – just a few minutes after he returned to 64 Richardson Street and at a time when his car was still parked outside – Manzueta called Alicea. In the conversation, which police overheard, Manzueta called to inquire as to why Manzueta had sold him 222 grams of cocaine, instead of the promised 250 grams.
            The Commonwealth has thus established that, within a few minutes of leaving Alicea’s residence, Manzueta had arrived at 64 Richardson Street and placed a call to Alicea. In the call, Manzueta complained to Alicea about the amount of cocaine that he had received, supporting the inference that he had had time to weigh the cocaine. The evidence thus corroborates Detective Burd’s testimony that Sergeant Shea followed Manzueta as he drove directly from Alicea’s home to his own residence at 67 Richardson Street. This evidence, in turn, establishes the occurrence of the anticipatory warrant’s triggering condition.
            In response, Manzueta notes that, when police first surveilled him – four days before the issuance of the anticipatory warrant – he stopped after leaving Alicea’s residence to interact with the driver of, and/or passengers in, a pickup truck before proceeding to 64 Richardson Street. Aff. at 10-11, ¶ 23. Thus, Manzueta contends, police observations four days before the execution of the anticipatory search warrant suggest the very real possibility that, four days later, he might similarly have stopped on his way home from purchasing cocaine at Alicea’s residence. From this, Manzueta argues
                                                            -16-
 
that the Commonwealth failed to prove that the triggering condition – that he proceed directly to 64 Richardson Street after visiting Alicea’s residence – occurred.
            This argument, too, is unpersuasive. For one thing, Detective Burd testified that Sergeant Shea followed Manzueta as he drove directly home from Alicea’s residence. Second, the timing of events on the day the warrant was executed makes Manzueta’s hypothetical scenario unlikely. That only fourteen minutes passed between when Manzueta was seen entering Alicea’s residence and when Manzueta called Alicea – from 64 Richardson Street – to discuss the weight of cocaine sold makes it most unlikely that Manzueta had time to conclude the transaction with Alicea, get back in his car, drive away, conduct a transaction involving the entirety of the drugs that he had just purchased, get back in his car again, drive to 64 Richardson Street, and then call Alicea. Although the evidence concededly does not eliminate this possibility, it makes it highly unlikely. “The test [for probable cause] is probable cause, not certainty.’” Escalera, 462 Mass. at 646 (emphasis in original), quoting, inter alia, Young, 77 Mass. App. Ct. at 836.
II. The Scope of the Search
            Manzueta’s argument that police exceeded the scope of the warrant when they searched his windbreaker jacket as part of the search of his home is cursory and requires only brief analysis. “The permissible intensity of a search is determined by the description of the items to be seized.” Commonwealth v. Wills, 398 Mass. 768, 775 (1986). “The size of the object or objects sought affects the appropriate scope of the search.” Id.
 
                                                            -17-
 
(citations omitted). So, “[f]or example, police officers may look in an envelope if they are searching for drugs.” Id., citing Commonwealth v. Hawkins, 361 Mass. 384, 387 (1972).
            Manzueta seeks to put the burden on the police to demonstrate specifically why they thought that the windbreaker might contain cocaine in the amounts he allegedly discussed with Alicea in the wiretapped conversations. The cases, however, make clear that, if an object sought could reasonably be found in a container, the police are justified in searching the container. See, e.g., Wills, 398 Mass. at 775; Hawkins, 361 Mass. 387. There is nothing in the evidence to suggest that 222 grams of cocaine could not be contained in a windbreaker. Indeed, that the police, in fact, found the cocaine in the windbreaker is conclusive evidence that it could. Put simply, nothing about this case suggests that police were anything but warranted in concluding that they might find drugs – or a cellular telephone – in the pockets of a windbreaker, as, indeed, they did. There is, therefore, no basis to conclude that the scope of the search exceeded what was permissible pursuant to the search warrant.
III.  The Search of Manzueta’s Person and his Statements
            Manzueta’s argument for the suppression of items seized from his person and  his statements is based entirely on his claim that it was the fruit of the poisonous tree – the purportedly impermissible search of 64 Richardson Street, Apartment 17. Because I conclude that the search of the residence was conducted pursuant to an anticipatory search warrant that established the requisite probable cause, see Section I, supra, I
 
                                                            -18-
further determine that the tree in this case was not poisonous, and there is thus no basis for suppression of items seized from the defendant during his arrest.
CONCLUSION AND ORDER
            For the foregoing reasons, the defendant’s Motion to Suppress Warrantless Search and Seizure, Motion to Suppress Warrantless Search of 64 Richardson Street Apartment 17 Residence, and Motion to Suppress Evidence from an Invalid Search
 
                                                            -19-
 
Warrant are all DENIED.
/s/David A. Deakin 
Associate Justice
Date: 
December 6, 2022