NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11725


COMMONWEALTH  vs.  JOHNNY COLONDRES.



Hampden.      December 2, 2014. - April 13, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.



Controlled Substances.  Search and Seizure, Warrant, Affidavit,
     Probable cause, Search incident to lawful arrest.
     Constitutional Law, Search and seizure, Probable cause.
     Probable Cause.  Practice, Criminal, Warrant, Affidavit,
     Motion to suppress.




Indictments found and returned in the Superior Court
Department on March 7, 2012.

     A pretrial motion to suppress evidence was heard by
C. Jeffrey Kinder, J., and the cases were heard by Tina S.
Page, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Merritt Schnipper for the defendant.
     Bethany C. Lynch, Assistant District Attorney, for the
Commonwealth.

GANTS, C.J. Before trial, the defendant, Johnny Colondres, moved to suppress evidence obtained from his apartment by Springfield police during the execution of an "anticipatory search warrant." The defendant claimed that police had executed the search before the "triggering events" stated in the affidavit had occurred, and that therefore the search should be treated as warrantless and the evidence suppressed. The motion judge denied the defendant's motion to suppress and, after a jury-waived trial before a different judge, the defendant was convicted of trafficking in heroin and cocaine, and of unlawful possession of marijuana with intent to distribute.[1] The defendant appealed, and we granted his application for direct appellate review. We conclude that where, as here, the Commonwealth applies for an anticipatory search warrant and the judicial authorization to execute the search is conditioned on the occurrence of a specific future event, the search is authorized by the warrant where there is equivalent compliance with that condition precedent. Because we conclude that, in this case, there was both equivalent compliance with the warrant's condition precedent and probable cause to search the

---

[1] The defendant was sentenced to from eleven to thirteen years in State prison on the trafficking convictions, and one year in the house of correction on the possession with intent to distribute conviction, all to be served concurrently. He was found not guilty on an indictment charging possession of "Ecstasy" pills with intent to distribute.

defendant's residence once equivalent compliance was achieved, we affirm the denial of the motion to suppress and the resulting convictions.

Background.  The facts are not in dispute.  The search of the defendant's apartment at 250 Oakgrove Avenue in Springfield arose out of an investigation by the Springfield police department of the defendant's nephew, Carlos Colondres.[2]  As detailed in the affidavit by Officer John Wadlegger in support of the application for the warrant to search the defendant's apartment, the police were investigating the sale of cocaine and heroin by a man known as "Loso."  The investigation was assisted by an anonymous "cooperating source" (CS), who informed Officer Wadlegger that the CS had purchased cocaine from Loso "numerous times over the past month."  The CS provided Officer Wadlegger with Loso's cellular telephone number and the license plate numbers of the two vehicles Loso operated, one of which the CS identified as belonging to Loso's girl friend.  The CS informed Officer Wadlegger that Loso lived with his girl friend "on a side street off of St. James Ave. in Springfield."  The CS also informed Officer Wadlegger that the CS had seen Loso in possession of heroin for sale, and that Loso had offered to sell heroin to the CS.

---

[2] Because Carlos Colondres has the same last name as the defendant, we refer to him as Carlos to avoid confusion.

After conducting a registry of motor vehicles inquiry, Officer Wadlegger determined that one of the vehicles identified by the CS was registered to Carlos, and the second vehicle was registered to a woman named Mychael Barnett who lived at 14 Berkeley Street in Springfield.[3] When Officer Wadlegger showed the CS the registry of motor vehicles photograph of Carlos, the CS positively identified Carlos as Loso. Officer Wadlegger conducted a surveillance of 14 Berkeley Street and observed both vehicles parked in front of the address. He also observed Carlos leave that address, travel to 250 Oakgrove Avenue, and enter the building at that address. Carlos reemerged a short time later and returned to 14 Berkeley Street.

Officer Wadlegger arranged for the CS to conduct two "controlled buys" of narcotics from Carlos. The first was initiated "[d]uring the week of December 25, 2011," when the CS telephoned Carlos and asked to purchase heroin from him; the second was initiated "[d]uring the week of January 8, 2012," when the CS telephoned Carlos and asked to purchase cocaine. During both initiating telephone calls, Carlos told the CS to meet him at a prearranged location; during the conversation initiating the second controlled purchase, Carlos explained that

---

[3] The Commonwealth claimed in its opposition to the defendant's motion to suppress that 14 Berkeley Street is only 0.2 miles from St. James Avenue in Springfield, but this information was not included in Officer John Wadlegger's affidavit in support of his application for a search warrant.

he "had to go and pick up the cocaine for the sale." Following the telephone conversations, police conducted a surveillance of Carlos's movements, observing the same sequence of events on both occasions. Carlos traveled to 250 Oakgrove Avenue in Springfield, where he parked his vehicle and entered the building. Carlos took the elevator to the third floor and entered apartment 304 with a set of keys.[4] A short time later, Carlos left the building and traveled to the arranged meeting location, where he met with the CS. After the meetings, Carlos returned to 14 Berkeley Street, and the CS met with Officer Wadlegger to turn over the drugs that the CS had purchased from Carlos using "buy money" the CS had been provided by the police.[5]

On January 19, 2012, Officer Wadlegger applied for a search warrant for the defendant's apartment. In his affidavit, Officer Wadlegger said that, based on his training and experience and on the information obtained through his investigation, the defendant's apartment was being used as a

---

[4] After the first controlled purchase, Officer Wadlegger entered the entryway of the building at 250 Oakgrove Avenue and saw the defendant's name on the mailbox for apartment 304.

[5] Before both controlled purchases, police searched the confidential source (CS) for "currency and/or contraband" and found none. The drugs that the CS turned over were "field tested" by police, with the drugs from the first controlled purchase testing positive for heroin, and the drugs from the second controlled purchase testing positive for cocaine.

"stash house" to store narcotics and cash.[6]  He stated in the affidavit that he was "requesting an anticipatory search warrant for 250 Oakgrove Ave., Apt. #304."  He also attested that, between 6 P.M. and 8 P.M. that day, he received information from the CS that Carlos "would be making a delivery of cocaine to the South End section of the city," and "would be leaving 14 Berkeley St. and then going to 250 Oakgrove Ave., Apt 304 to retrieve the cocaine," which Carlos would then deliver to the customer.  Officer Wadlegger declared in his affidavit, "If this occurs, this will trigger probable cause to believe that cocaine is being kept inside 250 Oakgrove Ave., Apt #304."

Based on the affidavit, a warrant was issued by an assistant clerk-magistrate of the Springfield Division of the District Court Department to search the defendant's apartment for cocaine, as well as for drug paraphernalia, monies, and personal papers.  Later that day, the police observed Carlos travel from 14 Berkeley Street to the defendant's apartment, leave a short time later, and reenter his vehicle.  At that time, not waiting for Carlos to make the anticipated delivery of cocaine, the police approached Carlos, removed him from the

---

[6] Officer Wadlegger explained in his affidavit that it is "quite common for upper level narcotics dealers" to have a "stash house" to protect their cash and narcotics from "'Rip Off' crews" and other rival drug dealers, and to reduce the likelihood that a cooperating source could inform police where the dealers store their cash and narcotics.

vehicle, and placed him under arrest.  During the search incident to arrest, two bags of cocaine, one weighing approximately 57 grams and the other 4.5 grams, were seized from Carlos's person.  The police then executed the search warrant for the defendant's apartment, seizing approximately 1,700 grams of cocaine, 878 tablets of "Ecstasy," 101 grams of heroin, one pound of marijuana, and drug packaging paraphernalia.[7]

The defendant moved to suppress the evidence obtained from the search, claiming that the search was not authorized by the warrant because it was conducted without the occurrence of the warrant's triggering event, i.e., the delivery of cocaine by Carlos to someone in the South End of Springfield.  In denying the defendant's motion to suppress, the motion judge concluded that the warrant to search the defendant's apartment was not an anticipatory search warrant.  He recognized that "the affiant . . . viewed probable cause as anticipatory," but found "no such limitation in the warrant itself," which commanded a search of the apartment within a reasonable time within seven days and "was not predicated on the occurrence of any triggering event." The judge also found that the search warrant affidavit

---

[7] The defendant was at home when the police knocked and announced themselves but he did not answer the door.  When the police forced open the door and entered the apartment, they saw the defendant running from a couch in the living room before he was secured.

"established probable cause that evidence of criminal activity would be found" at the apartment, "whether or not the triggering events occurred."  Having found that the search warrant was not anticipatory and that there was probable cause to support the warrant regardless of whether the triggering events occurred, the judge denied the motion to suppress.

Discussion.  We address first the judge's conclusion that the search warrant was not anticipatory because the warrant itself did not declare that a triggering event was a condition precedent to the execution of the search.  An anticipatory search warrant is "not require[d] . . . to contain on its face explicit directions about the triggering event, as long as the conditions precedent to the warrant's execution are contained in the affidavit supporting the application for the warrant." Commonwealth v. Williams, 431 Mass. 71, 73 (2000).  See United States v. Grubbs, 547 U.S. 90, 97-99 (2006); Commonwealth v. Gauthier, 425 Mass. 37, 41-45 (1997).  Because the affidavit here set forth the triggering events that were the conditions precedent to execution of the warrant, the failure of the warrant to recite those events on its face did not prevent the warrant from being an anticipatory search warrant.

"An anticipatory search warrant is a warrant that takes effect at a specified future time and not on its issuance." Commonwealth v. Staines, 441 Mass. 521, 525 (2004).  See

Commonwealth v. Cruz, 430 Mass. 838, 844 n.3 (2000), quoting United States v. Garcia, 882 F.2d 699, 702 (2d Cir.), cert. denied sub nom. Grant v. United States, 493 U.S. 943 (1989) ("An anticipatory warrant, by definition, is a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void").  See also Grubbs, 547 U.S. at 94, quoting 2 W.R. LaFave, Search and Seizure § 3.7(c), at 398 (4th ed. 2004) ("An anticipatory warrant is 'a warrant based upon an affidavit showing probable cause that at some future time [but not presently] certain evidence of crime will be located at a specific place'").  Implicit in this definition is that the occurrence of the "so-called 'triggering condition'" specified in the affidavit is necessary to establish probable cause and therefore is a condition precedent to the execution of the warrant.  See Grubbs, supra ("by definition, the triggering condition which establishes probable cause has not yet been satisfied when the warrant is issued").  Cf. Cruz, supra at 843-844 ("Because probable cause existed at the time the warrant was issued, it was not an anticipatory warrant").  The judge or clerk-magistrate who authorizes an anticipatory warrant must find probable cause to believe that the evidence particularized in the warrant "will be found when the search is conducted" (emphasis in original), Grubbs, supra at 95, not when the search

is authorized.  See Staines, supra.  The authorization of the search, therefore, is conditioned on the occurrence of the triggering condition, because only then will the judge's or clerk-magistrate's "probable cause determination at the time of issuance [have] reached fruition."  United States v. Rowland, 145 F.3d 1194, 1202 (10th Cir. 1998).

Because judicial authorization for the search depends on the occurrence of the condition precedent, the triggering condition must be "clearly and narrowly defined," Gauthier, 425 Mass. at 43, both "to avoid misunderstanding or manipulation by government agents," id. at 44, quoting United States v. Ricciardelli, 998 F.2d 8, 12 (1st Cir. 1993), and to permit a court to determine whether the triggering condition has occurred.  See Gauthier, supra.  Here, the triggering conditions were clearly defined:  Carlos would leave his residence at 14 Berkeley Street, travel to the defendant's apartment at 250 Oakgrove Avenue, and then make a delivery to the customer.  The first two conditions occurred; the third did not because Carlos was arrested after he left the defendant's apartment.

If strict compliance with the triggering conditions is required, the conditions were not met and the search of the defendant's apartment was not authorized by the warrant.  However, if equivalent compliance is required, the triggering conditions were met because Carlos's delivery of the cocaine was

instrumental in establishing probable cause only because it would have demonstrated that Carlos had obtained cocaine from the apartment, and that was demonstrated without a delivery once two bags of cocaine were found on his person during the search incident to arrest. In effect, the police substituted the discovery of the bags of cocaine on Carlos's person for the delivery of at least some of that cocaine to a third person.

We conclude that the execution of a search is authorized by an anticipatory search warrant once there is equivalent compliance, albeit not strict compliance, with the triggering conditions in the affidavit. An anticipatory search warrant, by definition, "takes effect at a specified future time," Staines, 441 Mass. at 525, which means that the affidavit supporting it must make a prediction about the future events that will trigger the warrant. Because the future rarely goes exactly according to plan, the benefits of an anticipatory warrant would too often be lost if we required that the triggering conditions be satisfied to the letter before the warrant takes effect.[8]

---

[8] "[O]ne of the major practical difficulties that confronts law enforcement officials is the time required to obtain a warrant. In many instances, the speed with which government agents are required to act . . . demands that they proceed without a warrant or risk losing both criminal and contraband. . . . The question . . . is whether the objective of the [F]ourth [A]mendment [to the United States Constitution] is better served by allowing an agent to obtain a warrant in advance of the delivery, or whether it is better served by forcing him to go to the scene without a warrant, and, if

In determining whether there has been equivalent compliance, we look to the inference that would have been drawn had the triggering conditions stated in the affidavit occurred -- here, that the cocaine in Carlos's possession was obtained from a stash in the defendant's apartment -- and determine whether the weight of that inference is as strong or stronger under the actual conditions.  The Commonwealth bears the burden of proving that the conditions that actually gave rise to the search were as or more likely to establish probable cause as the triggering conditions stated in the affidavit.  Cf. United States v. Miggins, 302 F.3d 384, 394-397 (6th Cir.), cert. denied sub. nom. Moore v. United States, 537 U.S. 1097 (2002), cert. denied, 537 U.S. 1130, and cert. denied sub. nom. McDaniels v. United States, 538 U.S. 971 (2003) (reading affidavit in "commonsense fashion" and concluding that triggering condition, which required delivery and acceptance of parcel containing cocaine by someone inside residence, was met where someone who had been previously inside residence greeted delivery person outside, accepted parcel, and immediately left with it in vehicle, because these events "sufficiently

necessary, proceed under the constraints of the 'exigent circumstances' exception, subject always to the risk of 'being second-guessed' by judicial authorities at a later date as to whether the known facts legally justified the search."  United States v. Garcia, 882 F.2d 699, 703 (2d Cir.), cert. denied sub. nom. Grant v. United States, 493 U.S. 943 (1989), quoting 1 W.R. LaFave, Search and Seizure § 3.7(c), at 700-701 (1978).

establishe[d] a connection between the parcel and someone who ha[d] access to the residence to which the parcel [was] addressed"); People v. Martini, 265 Ill. App. 3d 698, 708-710 (1994) ("the standard to be adhered to in the context of police execution of 'anticipatory' search warrants is the substantial compliance standard," and was satisfied where "strict compliance" was "not necessary").  Although here, by arresting Carlos, the police actively interrupted the sequence of events that the affidavit had said would trigger the warrant, that should not prevent the warrant from taking effect where the police otherwise established facts that provided equal support for the same inference on which the probable cause determination approved by the clerk-magistrate had been based.[9]

The requirement of equivalent compliance comports with our opinion in Commonwealth v. Gauthier, 425 Mass. 37 (1997).  Under the anticipatory warrant authorized in that case, there were three triggering conditions for the execution of the search warrant of the defendant's residence:  (1) the confidential informant was to place an order to purchase marijuana from the

---

[9] The record before the motion judge is silent as to why police chose to arrest Carlos and search him for cocaine rather than wait and see if he made the anticipated delivery.  But we recognize that there will sometimes be good reason for police to make such a choice in response to a developing situation, for instance, out of concern that crucial evidence will be lost or destroyed or that the identity of a confidential informant will be revealed.

dealer identified in the affidavit, (2) the dealer was to enter the defendant's residence (where marijuana was allegedly stored), and (3) marijuana was to be found on the dealer after he was searched upon leaving the residence. Id. at 39. The first two conditions were met, but we concluded that the third was not, because the police officer did not search the dealer as he was leaving the residence but instead waited until the officer saw him enter the vehicle that he had driven to the defendant's residence and place something on the floor behind the driver's seat.[10] Id. at 40-41. We declared, "The triggering event language in warrants such as this one should be read sensibly and in context, and, when that is done, we must conclude that the triggering event failed to materialize here." Id. at 41. We reached that conclusion not simply because the delay in searching the dealer departed from the letter of the third condition, but because the actual evidence of probable cause was significantly weaker where the marijuana was found in the dealer's vehicle rather than on his person as he was leaving the defendant's residence. We noted that the police officer did not testify that he saw the dealer carry the package as he left

---

[10] The dealer drove off before the police could reach him to conduct a search. He was finally stopped by the police one and one-half miles from the defendant's residence, "following an attempted escape." The police searched the vehicle and found a bag containing marijuana behind the driver's seat. Commonwealth v. Gauthier, 425 Mass. 37, 39-40 (1997).

the defendant's residence, and we further noted that where the driver of the vehicle "was himself an active dealer in narcotics," it was "possible that he had that particular bag of narcotics in the car all along." Id. at 40-41.

Our conclusion that equivalent compliance with the triggering conditions is sufficient to authorize the execution of the search warrant does not give "unfettered discretion" to the police. See Ricciardelli, 998 F.2d. at 12 ("magistrates who are asked to issue such warrants must be particularly vigilant in ensuring that the opportunities for exercising unfettered discretion are eliminated"). Although the police are not bound to the strict letter of the triggering conditions, they are very much fettered: where probable cause depends on compliance with the triggering conditions and the police do not strictly comply with those conditions, the Commonwealth must demonstrate at the motion to suppress hearing that the inference supporting probable cause was at least as strong from the conditions that actually gave rise to the search as it would have been from the triggering conditions stated in the affidavit. Failing that, the motion judge will rule that the execution of the search was not authorized by the warrant, and any fruits will be suppressed

unless the Commonwealth proves that the search was lawful as a warrantless search.[11]

---

[11] Because we conclude that there was equivalent compliance with the triggering conditions in this case, we need not consider whether a search is authorized by an anticipatory warrant where there is not equivalent compliance with the triggering conditions but where the information in the affidavit provided probable cause at the time the search warrant was approved regardless of whether there was compliance with the triggering conditions.  See Gauthier, 425 Mass. at 38 n.1.  See also United States v. Vigneau, 187 F.3d 70, 80 (1st Cir. 1999), cert. denied, 528 U.S. 1172 (2000) ("whether the condition was satisfied . . . is beside the point" where "leaving the package at the door did nothing to establish probable cause to search the premises" and "probable cause existed to search the premises without delivery of the package [emphasis in original]").

Where an affiant believes that there might be probable cause to conduct a search without any triggering conditions but that probable cause would be stronger with triggering conditions (e.g., where an affiant believes that the evidence described in the affidavit might be regarded as stale), the affiant may request in the affidavit both an anticipatory and a traditional warrant to search the premises.  A judge or clerk-magistrate will determine whether to issue an anticipatory search warrant based on whether there will be probable cause for the search once the triggering condition is satisfied, and whether there is probable cause to believe that the triggering condition will occur.  See United States v. Grubbs, 547 U.S. 90, 96-97 (2006), quoting Illinois v. Gates, 462 U.S. 213, 238 (1983) ("[F]or a conditioned anticipatory warrant to comply with the Fourth Amendment's requirement of probable cause, two prerequisites of probability must be satisfied.  It must be true not only that if the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' . . . but also that there is probable cause to believe the triggering condition will occur" [emphasis in original]).  The judge or clerk-magistrate will determine whether to issue a traditional search warrant based on whether there is probable cause for the search at the time of the warrant request.  If the warrant is allowed as both an anticipatory and a traditional warrant (and the judge or clerk-magistrate should so specify), a judge deciding a motion to suppress the search should treat the warrant as an anticipatory

Having found equivalent compliance with the triggering conditions, we conclude that compliance with those conditions provided probable cause to believe that evidence of Carlos's drug trafficking would be located at the defendant's residence, which Carlos appeared to use as a "stash house."[12]  Where, as here, "the place to be searched is a residence," a showing of probable cause requires that the affidavit establish "a sufficient nexus" connecting the residence with evidence of criminal activity, by "provid[ing] a substantial basis for concluding that [such] evidence" will be found at the residence. Commonwealth v. Tapia, 463 Mass. 721, 725-726 (2012), quoting Commonwealth v. Pina, 453 Mass. 438, 441 (2009), and Commonwealth v. Donahue, 430 Mass. 710, 712 (2000).  This nexus "need not be based on direct observation," Donahue, supra, quoting Commonwealth v. Cinelli, 389 Mass. 197, 213, cert. denied, 464 U.S. 860 (1983), but "may be found in ' . . . normal inferences as to where a criminal would be likely to hide' the drugs he sells."  Commonwealth v. O'Day, 440 Mass. 296, 302 (2003), quoting Cinelli, supra.  Although "[n]o bright-line rule can establish whether there is a nexus between suspected drug

_____

warrant if there is equivalent compliance with the triggering condition and as a traditional warrant if there is not.

[12] The defendant does not contend that there was not probable cause to believe that Carlos was engaged in drug trafficking at the time of his arrest.

dealing and a defendant's home . . . [,] [o]bservations by police of a suspect on multiple occasions leaving his residence and proceeding directly to a prearranged location to sell drugs can support a reasonable inference that the suspect is a drug dealer who stores drugs or packages drugs for resale in his residence." Commonwealth v. Escalera, 462 Mass. 636, 643 (2012) (citing cases).

Officer Wadlegger's affidavit specified that during two controlled purchases, one during "the week of December 25, 2011," and the second during "the week of January 8, 2012," the police observed that, shortly after the CS had telephoned Carlos to initiate the purchase of heroin or cocaine, Carlos left his residence and stopped briefly at the defendant's apartment before delivering the heroin or cocaine to the CS.[13] If there was any risk that the information regarding the earlier controlled purchases was stale or that it was insufficient to establish a pattern connecting the defendant's residence with Carlos's drug trafficking, that risk was eliminated when, in equivalent compliance with the triggering conditions for execution of the search, the same pattern was repeated by Carlos before he was found with two bags of cocaine on his person outside the defendant's apartment. Considered together with

---

[13] Carlos told the CS prior to one of these controlled purchases that Carlos "had to go and pick up the cocaine."

Officer Wadlegger's statement that, based on his experience, narcotics dealers commonly store drugs at "stash houses" located somewhere other than their primary residences, this evidence provided probable cause to believe that Carlos used the defendant's residence as a "stash house" from which he retrieved drugs when he needed them for a sale.[14]

Conclusion.  We therefore conclude, for reasons other than those found by the motion judge, that the defendant's motion to suppress was properly denied.  The defendant's convictions are affirmed.

So ordered.

---

[14] For an anticipatory warrant to comply with the Fourth Amendment, there must not only be probable cause for the search once the triggering condition is satisfied; there must also be probable cause to believe that the triggering condition will occur.  See Grubbs, 547 U.S. at 95-97.  The defendant does not specifically challenge on appeal whether there was probable cause to believe that the triggering conditions set forth in the affidavit would occur.  Even if he had, such a challenge would fail, because the belief that the triggering conditions would occur was based on information from the CS, and in denying the motion to suppress, the motion judge implicitly found that the CS's basis of knowledge and veracity had been established in the affidavit (as required to show probable cause) from the corroboration obtained through independent police investigation of the information provided by the CS and through the two controlled purchases.  See, e.g., Commonwealth v. Tapia, 463 Mass. 721, 728-730 (2012).