UNITED STATES of America,
Plaintiff,

v.

William Floyd PERKINS, Defendant.

Case No. 4:16–cr–20

United States District Court,
E.D. Tennessee, Winchester Division.

Signed 07/05/2017

Terra Bay, US Department of Justice, Chattanooga, TN, for Plaintiff.

## ORDER

HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE

On April 20, 2017, United States Magistrate Judge Susan K. Lee filed a Report and Recommendation (Doc. 42) pursuant 28 U.S.C. § 636(b)(1), in which she recommends that the Motion to Suppress (Doc. 16) filed by Defendant William Floyd Perkins be denied. The Court has conducted a *de novo* review of the record as it relates to Defendant's objections, and for the reasons stated hereafter, will **SUSTAIN IN PART** Defendant's objections to the Report and Recommendation, **REJECT IN PART** the legal conclusions in the Report and Recommendation, and **GRANT** Defendant's Motion to Suppress.

## I. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the Report and Recommendation to which an objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

## II. BACKGROUND

On November 22, 2016, Defendant William Floyd Perkins was indicted on one count of possessing with the intent to distribute fifty grams or more of methamphetamine (actual) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). (Doc. 1). On February 21, 2017, Defendant filed the instant motion, in which he contests the February 9, 2016, search of a parcel addressed to him as well as the execution of a search warrant for his home that subsequently issued. (Doc. 16). The Court referred the Motion to Magistrate Judge Lee the next day. (Doc. 17). Magistrate Judge Lee held an evidentiary hearing on March 14, 2017. (Doc. 22). Rutherford County Sheriff's Department Detective Curtis Brinkley and United States Drug Enforcement Agency Officer Kyle Brewer appeared as witnesses for the Government. Jennifer Sons appeared as a witness for Defendant. (*Id.*).

Neither party objects to Magistrate Judge Lee's recitation of the underlying facts, and for ease of reference, the Court will recount them here:

Brinkley has ten years of law enforcement experience, and on the day at issue he was assigned to "parcel interdiction," which takes place one or two times a week at the FedEx shipping center in Murfreesboro, Tennessee. On February 9, 2016, Brinkley conducted a parcel interdiction or routine inspection at the Murfreesboro FedEx Center.

To summarize "parcel interdiction," Brinkley looks for what he considers to be a suspicious parcel that may contain contraband, specifically drugs. Once a suspicious parcel is found, a drug detection canine is deployed to conduct an "air sniff" around the suspicious parcel and at least two additional drug-free "control" parcels. If the dog alerts on the suspicious parcel, then the package is taken to a FedEx manager so that he or she can be informed of the dog alert to the parcel. Brinkley testified that he always tells the FedEx manager that it is up to him or her whether to open the parcel and not to open it for the police. At that point, the manager makes a decision about whether to open the parcel based on the interests of FedEx, according to Brinkley. Brinkley testified that sometimes the manager opens the parcel and sometimes the manager does not. In situations where the manager decides not to open the parcel, Brinkley completes paperwork related to taking custody of the parcel from FedEx and seeks a search warrant to open the parcel. Brinkley testified that he has always been able to obtain a search warrant for a parcel when there is a positive dog alert, as in this case.

On the day at issue, Brinkley noticed a parcel (the "package") with a large amount of taping along the seams that was shipped from California, a "known source state" for illegal drugs. He was suspicious of the package because it was shipped form California with excessive tapping, so he decided to investigate it further by using the "TLO database" to look up the shipper and recipient information listed on the shipping label. The shipping label was entered as government's Exhibit 1. Using the TLO database, Brinkley concluded the shipper's name and address could not be verified as connected to a legitimate person.

Brinkley testified he also could not verify the recipient information, which was listed as "B. Perkins" at "5831 Rowe Gap Rd, Belvidere TN 37306" using the TLO database. The lack of verification via the TLO database added to Brinkley's suspicions.

Because he found the package suspicious for the above noted reasons, Brinkley requested a drug dog air sniff of the package. The package was presented along with other control parcels to a drug detection dog team. The dog handler reported that the dog alerted to the presence of the odor of narcotics in the package. Brinkley then took the package to the FedEx manager and explained his suspicions including the positive dog alert. Prior to Brinkley's contact with the manager, she was unaware of the package and no suspicions had been raised by FedEx about the package. The FedEx manager opened the package, and found a plastic bag of what looked to Brinkley to be crystal methamphetamine. Brinkley told the manager to drop the plastic bag and he took custody of the package, which was resealed with the suspected methamphetamine in it.

Because the delivery address was several counties away, another agency was contacted to determine if it wanted to conduct a controlled delivery of the package. Brewer agreed to make an undercover controlled delivery of the package and began preparations to do so. At the same time, another DEA Task Force Officer, Daniel Warren ("Warren"), prepared an affidavit to obtain an anticipatory search warrant upon delivery of the package. The warrant and incorporated affidavit were entered as government's Exhibit 2.

Warren obtained what the parties agree is an anticipatory search warrant.

The search warrant itself does not contain the triggering event for execution of the warrant, but Warren's incorporated affidavit states the warrant will be executed upon hand delivery of the package to Defendant at the address listed on the shipping label [Exhibit 2 at ¶¶ 21, 22, 26, and 27].

Brewer, dressed as a FedEx delivery man, made a controlled delivery of the package to the destination address while other officers waited in a van disguised as a FedEx delivery vehicle. Brewer did not personally read the warrant, but he was informed that the triggering event to execute the warrant was delivery of the package to the noted address. He was not aware of any requirement that the package be hand delivered to Defendant. Brewer knocked on the door of the residence, a single-wide trailer, and Sons opened the door. Brewer told Sons that he had a package for delivery. Brewer asked Sons, "Are you expecting a package?" He testified that Sons replied, "Yes, we are."

In his role as a FedEx delivery man, Brewer did not ask for Defendant so he did not know if Defendant was home at the time of delivery. Brewer testified he gave the package to Sons because she said "we" are expecting a package and the package did not require a signature. Brewer then returned to the van, and other agents began the execution of the warrant. Brewer joined the search once he was back in clothing that identified himself as being with law enforcement. Upon execution of the warrant, the unopened package was found in the bedroom of the residence with Sons. Defendant was not home, but arrived around one hour later.

(Doc. 26 at 2–4).

Following the hearing and supplemental briefing by the parties, Magistrate Judge Lee recommended that the Motion to Suppress be denied. She found that the FedEx Manager was not acting as an agent of the government when he opened the parcel, thus exempting the search from the protections of the Fourth Amendment. (Doc. 26 at 8–13). Specifically, Magistrate Judge Lee found that Defendant had failed to prove that the FedEx Manager acted with the intent to assist law enforcement. (*Id.*). As to the execution of the search warrant, Magistrate Judge Lee found that the triggering event was satisfied when the parcel was accepted and taken into the residence by Sons, even though the triggering event required "hand delivery" to Defendant. (*Id.* at 13–15).

On May 4, 2017, Defendant filed his objections to the Report and Recommendation. (Doc. 27). On May 15, 2017, the United States filed a Response. (Doc. 29). The Court, having reviewed the parties' submissions, finds that the issues are fully briefed and ready for disposition.

### III. ANALYSIS

Defendant makes the following objections: (1) that under binding Sixth Circuit precedent, he has made the necessary showing that the FedEx Manager acted with the intent to assist law enforcement, rendering her an agent of the government; (2) that the triggering event set forth in the warrant's supporting affidavit did not occur; and (3) that the officers' improper execution of the warrant is not saved by the good faith exception.

### A. Search of the Parcel on February 9, 2016

▆▆▆ "[The] Fourth Amendment proscribes only governmental action and does not apply to a search or seizure, even an unreasonable one, conducted by a private individual not acting as an agent of the government or with the participation or

knowledge of any governmental official." *United States v. Lambert*, 771 F.2d 83, 89 (6th Cir. 1985). The parties do not contest that Defendant bears the burden of proving by a preponderance of the evidence that an agency relationship exists between the government and a private individual executing a search. *See, e.g., United States v. Freeland*, 562 F.2d 383, 385 (6th Cir. 1977); *United States v. Coleman*, 628 F.2d 961, 965 (6th Cir.1980). The parties also agree that in order to establish agency in this context, a defendant must show: (1) "the police must have instigated, encouraged, or participated in the search;" and (2) "the individual must have engaged in the search with the intent of assisting the police in their investigative efforts." *Lambert*, 771 F.2d at 83 (quotations omitted).

■ As outlined above, Magistrate Judge Lee found that the FedEx Manager was not acting as agent, namely because there was nothing in the record establishing her intent while opening the package. (Doc. 26 at 8–13). Defendant's main argument in his objections is that because Officer Brinkley brought the parcel to the attention of the FedEx Manager, the intent element is satisfied, as this fact evidences that the Manager "had no reason or duty, independent of her interaction with Officer Brinkley, to inspect the package[.]" (Doc. 27 at 4). This is argument is troublesome on two fronts. First, it conflates the two factors set forth in *Lambert* into one—if all a criminal defendant had to do to invalidate a search by a private individual was establish that law enforcement "instigated, encouraged, or participated in" the process, the "intent" element would be rendered meaningless. Second, Defendant's argument ignores the fact that there is no direct proof before the Court, one way or the other, of the FedEx Manager's intent when she opened the parcel at issue. As candidly noted by Mag-

istrate Judge Lee in her Report and Recommendation, neither party subpoenaed the FedEx Manager to the suppression hearing, although doing so could have been easily accomplished and extremely helpful in the Court's analysis. (Doc. 23 at 24) ("[O]bviously this is a witness that could have easily been called by either side.").

Defendant also argues that the Sixth Circuit's decision in *United States v. Hardin*, 539 F.3d 404, 419 (6th Cir. 2008), compels a different conclusion. In *Hardin*, police wished to search the defendant's apartment and solicited the apartment complex manager to assist them. The Court held that the manager acted an agent of the government, namely because he gained access to the apartment as part of a ruse constructed by the government:

> The officers advised the manager of [defendant]'s criminal history, namely a shoot-out with police officers following an armed-robbery incident in the mid-1990s, a conviction for which [the defendant] served ten years in prison. [The officer] testified that the apartment manager was shocked and worried about [the defendant]'s potential presence in the apartment complex, and [the officer] told the manager that "we need to see if he is there" and that "[w]e *asked* him to go ahead and under the ruse check to see if he was there." [The officer] unequivocally stated that "[w]ithout a doubt, the ruse "was my idea." At trial, [the officer] testified that "[w]e *sent* the manager of the apartment to see if [the defendant] was there."

*Id.* (emphasis in original). The Sixth Circuit placed considerable weight on the manager's reaction to police, in addition to the fact that police directly asked him to enter the apartment. In this case, we have no information about the FedEx Manager's reaction to being told of Officer Brinkley's suspicions. At the hearing, Officer

Brinkley only testified that he did not ask her to open the parcel. He provided no information as to her state of mind. (Doc. 23 at 10–11). On this basis, the Court finds this case distinguishable from *Hardin.*

Simply put, the nature of the FedEx Manager's intent is unknown, and that is something Defendant was required to prove by a preponderance of the evidence to succeed on the merits of this argument. Insofar as Defendant challenges the February 9, 2016, search of the parcel at the FedEx facility, his Motion to Suppress will be **DENIED.**

## B. Execution of the Anticipatory Warrant

### 1. *Fourth Amendment Violation*

Defendant also argues that the parcel containing methamphetamine should be suppressed due to law enforcement's improper execution of the anticipatory warrant. The warrant's supporting affidavit reads as follows:

21. The following tactics will be used by our agency and the Franklin County Sheriff's Department during the controlled delivery ... to PERKINS. DEA TFO Kyle Brewer will pose as a FedEx delivery driver; TFO Brewer will knock on the residence door of 5831 Rowe Gap Road ... *and TFO Brewer will hand deliver the above mentioned package to PERKINS.*

22. If the above conditions are met, your affiant and other agents/officers will execute this search warrant ...

(Doc. 16–2 at 12–13) (emphasis added). As outlined above, when Officer Brewer attempted the controlled delivery, he handed the parcel to Jennifer Sons, Defendant's fiancé, and not to Defendant himself. Defendant was not home and did not arrive until an hour after the search warrant was executed, nor did he ever possess the parcel himself. The parties contest whether delivery to Sons satisfied the anticipatory warrant's triggering event.

Anticipatory search warrants take effect at a specified future time or event, not at issuance, and generally do not run afoul of the Fourth Amendment. *United States v. Grubbs,* 547 U.S. 90, 94, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006). Probable cause for anticipatory warrants is conditional on the occurrence of a particular "triggering event;" usually the future delivery, sale, or purchase of contraband. *Id.* This type of warrant requires the issuing magistrate to conclude, first, that there is a fair probability that contraband or evidence of a crime will be found in the place to be searched if the triggering condition occurs and, second, that there is probable cause to believe that the triggering condition will occur. *Id.* at 96–97, 126 S.Ct. 1494.

The Fourth Amendment "does not require that the triggering condition for an anticipatory search warrant be set forth in the warrant itself." *Id.* at 99, 126 S.Ct. 1494. The triggering event, however, must be explicit, clear, and narrowly drawn. *United States v. Miggins,* 302 F.3d 384, 395 (6th Cir. 2002). "The purpose of defining a triggering event in an anticipatory warrant is to ensure that officers serve an almost ministerial role in deciding when to execute the warrant." *United States v. Ricciardelli,* 998 F.2d 8, 12 (1st Cir. 1993) (internal quotations omitted). However, "[w]arrants and their supporting documents are be read not hypertechnically, but in a commonsense fashion." *Miggins,* 302 F.3d at 395 (internal quotations omitted). If a triggering event does not occur, the warrant is rendered void. *United States v. Rey,* 923 F.2d 1217, 1221 (6th

Cir. 1991); *see also United States v. Rowland*, 145 F.3d 1194, 1201 (10th Cir. 1998).

Clearly, the triggering event in this case did not occur as outlined in the warrant's supporting affidavit, as the parcel was never hand delivered to Defendant. Even so, the Magistrate Judge found in her Report and Recommendation that the triggering event was satisfied, reasoning that "binding precedent ... [holds] that the triggering event set forth in the affidavit must be read in a commonsense fashion that avoids a hypertechnical construction." (Doc. 26 at 14). In making this finding, the Magistrate Judge relied on *United States v. Miggins*, 302 F.3d 384, 395 (6th Cir. 2002), and *United States v. Penney*, 576 F.3d 297, 310–11 (6th Cir. 2009). Defendant objects to the Magistrate Judge's conclusion that the triggering event was satisfied when Officer Brewer delivered the parcel to someone other than Defendant. (Doc. 27 at 6).

The Sixth Circuit has indulged minor departures from the exact wording of the triggering event in anticipatory warrants, relying on the same logic referenced by the Magistrate Judge. In *Miggins*, the triggering event set forth in an anticipatory warrant required "delivery and acceptance of the package by someone inside the residence." 302 F.3d at 395. When police attempted delivery, they handed the package to an individual who had exited the residence mere moments before, and thereafter executed the search warrant. The court, finding that the triggering event was satisfied, held:

> [T]he affidavit did not "require that the person receiving the package actually be inside the residence when the package is delivered or that the person receiving the package take it inside the residence and remain indoors .... Read in a commonsense fashion, and avoiding a hypertechnical construction, we believe that

the triggering event language of the affidavit was satisfied if the package was taken by someone who had been inside the residence just prior to its delivery. *Id.* Similarly, in *Penney*, the triggering event required a defendant to "meet[ ] with the C.I. to examine and attempts to purchase narcotics by obtaining funds or promising to obtain funds in the near future in order to complete the transaction." 576 F.3d at 310. The defendant argued that the triggering event never occurred because he never personally examined the drugs or obtained any money. The Sixth Circuit found otherwise, reasoning:

> All the operative transactions specified in the warrant actually occurred: [defendant] met with the CI, and an attempt was made to purchase drugs with funds that were actually obtained .... [U]nder a common-sense reading of the warrant, the triggering condition was met when [defendant] met with Cotton and the CI, and the CI signaled to the police that the funds to be used for the drug purchase were present.

*Id.* at 311.

While the Court acknowledges that these cases constitute relevant authority, it finds that the facts of this case are distinguishable. In both *Miggins* and *Penney*, all the individuals specified in the warrant were present and all major events required by the triggering event occurred—it was only that some minor detail went awry, or that the parties disagreed about the precise meaning of the triggering event's language. In this case, the triggering event required hand delivery to Defendant, but instead, Officer Brewer delivered the parcel to a different, completely unknown individual. That is not a minor detail—or even a detail at all. Rather, Defendant's acceptance of the parcel was a major component of the triggering event.

The government urges the Court apply the "equivalent compliance" standard set forth in *Commonwealth v. Colondres*, 471 Mass. 192, 27 N.E.3d 1272, 1278 (2015). In *Colondres*, a Massachusetts state court upheld the execution of an anticipatory search despite the fact that the triggering event did not occur as planned. The court reasoned:

> [T]he execution of a search is authorized by an anticipatory search warrant once there is equivalent compliance, albeit not strict compliance, with the triggering conditions in the affidavit. An anticipatory search warrant, by definition, 'takes effect at a specified future time,' ... which means that the affidavit supporting it must make a prediction about the future events that will trigger the warrant. Because the future rarely goes exactly according to plan, the benefits of an anticipatory warrant would too often be lost if we required that the triggering conditions be satisfied to the letter before the warrant takes effect.
>
> ...
>
> In determining whether there has been equivalent compliance, we look to the inference that would have been drawn had the triggering conditions stated in the affidavit occurred ... and determine whether the weight of that inference is as strong or stronger under the actual conditions.

*Id.* (internal quotations and citations omitted).

The Court finds no justification here for subscribing to the *Colondres* analysis. While the Sixth Circuit requires triggering events to be read in a "commonsense" as opposed to a "hypertechnical" fashion, it has not gone so far to embrace an "equivalent compliance" line of reasoning. In fact, the government has cited no authority reflecting that any federal court has adopted such a standard, and this Court has found none.

 The government further argues: "[W]hile it might have been a better practice to designate that the parcel be delivered to the residence, rather than naming the defendant as the recipient, it does not change the fact that the delivery to the house of four ounces of methamphetamine was the essential triggering event ...." (Doc. 20 at 6). Contemplating what kind of warrant and supporting affidavit the magistrate "might have" signed is, in the mind of this Court, an unsound endeavor.[1] Just because the warrant "might have" been formulated differently does not relieve law enforcement from fulfilling the requirements of the triggering event as specified. After all, the Fourth Amendment compels courts to analyze the facts actually presented to, and signed off by, a neutral magistrate—not those that a reasonable magistrate might have approved if only he or she was aware of

---

1. The Court is well aware of the maxim that search warrants are directed at places instead of people, *See Zurcher v. Stanford Daily*, 436 U.S. 547, 555, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) ("Search warrants are not directed at persons; they authorize the search of "places" and the seizure of "things," and as a constitutional matter they need not even name the person from whom the things will be seized.") (internal quotations and citations omitted); *see also United States v. Pinson*, 321 F.3d 558, 564 (6th Cir.2003) ("[A]n affidavit in support of a search warrant does not need to name or describe the person who sold the drugs or name the owner of the property."). Admittedly, in similar cases involving these types of warrants, the triggering event required delivery to anyone in the residence and not to particular person. *See, e.g., Miggins*, 302 F.3d at 395. In this case, however, law enforcement selected this distinct triggering event and then presented it for the magistrate's review and signature. That officers may now regret these choices and wish they had made others in retrospect is beside the point—they remain bound by them.

them. *See Aguilar v. Texas*, 378 U.S. 108, 109, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention.") (emphasis in original). This is the precise reason that triggering events in anticipatory warrants must be "explicit, clear, and narrowly drawn." As noted by one court:

> [T]he magistrate judge cannot rely on police assurances that the search will not be conducted until probable cause exists. Rather, the magistrate judge must find, **based on facts existing when the warrant is issued**, that there is probable cause to believe the contraband, which is not yet at the place to be searched, will be there when the warrant is executed .... [W]ithout tight controls on the use of anticipatory warrants, courts could be accused of ceding their decision-making authority to the police force, the very entity the Fourth Amendment was designed to protect against.

*United States v. Bingham*, 270 F.Supp.2d 665, 669 (W.D. Penn. 2003) (internal quotations and citations omitted); *see also State v. Phillips*, 160 N.C.App. 549, 586 S.E.2d 540, 543 (2003) (The central concern ... [is] whether the officer executing the warrant could create the circumstances justifying its execution ... [w]hen the warrant is executed after an appropriately drawn triggering event occurs, probable cause, justifying the invasion of privacy, has been established by a neutral and detached magistrate.").

█ In this case, the wording of the triggering event is extremely specific. If the Court were to read the affidavit in the manner the government proposes, the requirement that the package be hand delivered to Defendant would be read out of existence, and the triggering event con-templated by the neutral magistrate would lose all importance. It would also undermine the "purpose of defining a triggering event" which is "to ensure that officers serve an almost ministerial role in deciding when to execute the warrant." *Ricciardelli*, 998 F.2d at 12 (internal quotations omitted).

Compounding the problem is that neither the warrant nor the supporting affidavit contains any mention of Sons or her connection to the illegal activity suspected. As will be discussed further below, all the additional information in the affidavit concerns Defendant. (Doc. 16–2). Furthermore, when Officer Brewer delivered the parcel, no attempt was made to ascertain whether Defendant was present at the residence, or if he even lived there at that time. Brewer testified at the hearing that when he delivered the parcel, he asked Sons, "Are you expecting a package?" He testified that she replied, "Yes, we are." (Doc. 16–2 at 26–27). Brewer further testified that based on her response, he "assume[d] that there was somebody else in the house," but he did not testify that he believed Defendant was present. (*Id.* at 27).

At its most basic level, the government's argument seeks to undermine the importance of triggering events being "explicit, clear, and narrowly drawn," and thereafter diligently executed by law enforcement. The issue here is not decided by an ambiguous turn of phrase or linguistic technicality, as was the case in *Miggins* and *Penney*. Instead, the reasoning advanced by the government approaches a *post hoc* justification of a search, in which the substance and execution of a warrant are reduced to trifling details. Such a path is fraught with danger, leading to an increased likelihood of unpredictable, unreasonable searches and awarding the sort of unfettered authority to law enforcement

that the exclusionary rule and Fourth Amendment were intended to prevent.[2] Accordingly, the Court finds that police officers violated Defendant's Fourth Amendment rights in executing the search of Defendant's residence when they failed to abide by the triggering event.

### 2. *Good Faith Exception*

The government argues that even if this Court found a Fourth Amendment violation, the evidence Defendant seeks to suppress should not be excluded pursuant to the good faith exception outlined by the Supreme Court in *United States v. Leon*, 468 U.S. 897, 925, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and later clarified in *United States v. Herring*, 555 U.S. 135, 143, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009). For the reasons set forth below, the Court disagrees with the government's position, and finds that the good faith exception does not save the improperly executed warrant.[3]

▬ The exclusionary rule is a "judicial innovation," *United States v. Clariot*, 655 F.3d 550, 553 (6th Cir. 2011), the sole purpose of which is to deter police misconduct and future Fourth Amendment violations. *Davis v. United States*, 564 U.S. 229, 236, 131 S.Ct. 2419, 180 L.Ed.2d 285 ("The rule's sole purpose . . . is to deter future Fourth Amendment violations.") (collecting cases). Based on this principle, the Supreme Court in *Leon* held that when officers act in reasonable reliance on a search warrant that is later found to be invalid, the exclusionary rule should not bar the use of the evidence the police obtained. 468 U.S. at 913, 104 S.Ct. 3405. Furthermore, in *Herring*, the Court held that before applying the exclusionary rule, the trial court must weigh the benefits of deterrence to law enforcement with the societal costs of exclusion:

> We have never suggested that the exclusionary rule must apply in every circumstance in which it might provide marginal deterrence. To the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighted against its substantial social costs. The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free— something that offends basic concepts of the criminal justice system.

555 U.S. at 142, 129 S.Ct. 695. For that reason, the *Herring* Court explained: "As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systematic negligence." *Id.* at 144, 129 S.Ct. 695.

At the outset, the Court notes that the *Leon* exception may not even be applicable to these facts. As noted by one federal appeals court:

> [I]f a situation arises in which officers wrongly conclude that the triggering event needed to animate an anticipatory warrant has occurred, and proceed to execute a full search in the face of this mistake, we would not review that mistake under *Leon's* good faith standard.

*Ricciardelli*, 998 F.2d at 17 n.10; *see also United States v. Rowland*, 145 F.3d 1194, 1208 n.10 (10th Cir. 1998) ("The *Leon* good faith exception will not save an improperly executed warrant."). The circumstances giving rise to this motion did not involve

---

**2.** As will be set forth more fully below, the warrant was not otherwise supported by probable cause without the triggering event.

**3.** Because the Magistrate Judge found that the search did not violate the Fourth Amendment, she did not address the parties' arguments regarding good faith. (Doc. 26 at 15 n. 5).

law enforcement properly executing an invalid warrant that they "reasonably" believed to be valid. Rather, the parties agree that the warrant itself was sound—the controversy concerns the warrant's improper execution. Importantly, the Supreme Court in *Leon* stated: "Our discussion of the deterrent effect of excluding evidence obtained in reasonable reliance on a subsequently invalidated warrant *assumes, of course, that the officers properly executed the warrant . . . .*" 468 U.S. at 918 n. 19, 104 S.Ct. 3405 (emphasis added). In this case, the Court's "assumption" in *Leon* did not occur, and thus, it is unclear whether the government can invoke its protections. Neither the Supreme Court nor the Sixth Circuit has addressed this specific issue.

 Even if this case could be considered under the *Leon* framework, as the government insists, their argument falls short of the mark. The government suggests that, apart from the triggering event and information regarding the parcel, the other information set forth in the affidavit is sufficient to support the officers' good faith belief of probable cause. The Court disagrees. Outside of the parcel, the only information provided in the affidavit consisted of the following: (1) that Defendant has prior drug convictions; (2) that local law enforcement are "familiar" with Defendant and that Defendant is known "as a dealer of methamphetamine;" and (3) a report from a confidential informant that at an unspecified location in the past six months, he purchased drugs from Defendant. The Court will address each of these in turn.

First, Defendant's prior drug convictions do not establish probable cause. Defendant's criminal history, according to the affidavit, includes a 2003 conviction for possession of unlawful drug paraphernalia and a 2004 conviction for possession of a Schedule II drug. (Doc. 16–2 at 11). The Sixth Circuit has been clear that drug-related convictions from the distant past are insufficient to justify a search of a defendant's residence. *See United States v. Brown*, 828 F.3d 375, 394 n. 3 (6th Cir. 2016) (holding in regard to a criminal defendant's 1999 conviction for conspiracy to distribute marijuana that "a twelve-year-old conviction hardly proves that [the defendant] was dealing drugs at the time of his arrest.").

 Second, as to Defendant's alleged reputation as a drug dealer, there are no facts set forth in the affidavit to support this conclusion, apart from the unsubstantiated information supplied by the confidential informant. Even if such facts were contained in the warrant, it would not be enough to establish probable cause. The Sixth Circuit has acknowledged that " "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)). The Sixth Circuit has never held, however, that a defendant's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home." *Id.* (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)). Rather, the Fourth Amendment demands at least "some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence . . . such as an informant who observed drug deals or drug paraphernalia in or around the residence." *Id.* As stated above, without a proper controlled delivery of the parcel, the "reliable evidence" required to establish probable cause is missing in this case.

 Finally, the information supplied by the confidential informant fails to constitute probable cause. The informant only states that he purchased drugs from

Defendant in the previous six months; he does not state that he purchased the drugs at Defendant's home. (Doc. 16–2 at 10). Furthermore, the informant's testimony is wholly uncorroborated, and nothing in the warrant demonstrates his reliability. For a search warrant to be valid, there must be "a nexus between the place to be searched and the evidence to be sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). In this case, the informant's testimony fails to establish such a connection.

In sum, apart from the controlled delivery of the parcel, no other information in the affidavit is specific to Defendant's residence. Given the well-settled state of the law in these respects, it was not objectively reasonable for a well-trained police officer to assume that the other "facts" set forth in the affidavit, on their own, constituted probable cause.

In an attempt to save its argument, the government likens the facts of this case to another from the Eleventh Circuit, *Croom v. Balkwill*, 645 F.3d 1240 (11th Cir. 2011). (Doc. 25 at 7–8). In *Croom*, an anticipatory warrant required acceptance of a parcel by an occupant within a residence; instead, a police officer handed the parcel to an individual outside the house, who then immediately walked inside after acceptance. Police then searched the home. The Eleventh Circuit found the search to be "plainly constitutional" because "[o]nce that package was delivered to [the defendant] and taken inside the home, reasonably prudent men ... would have been warranted in the belief that they were validly authorized to execute the warrant and search the Premises." *Id.* at 1250 (internal quotations omitted).

The government's reliance on *Croom* is flawed in several respects. First, the facts of *Croom* are markedly similar to *Miggins* and therefore readily distinguishable from the instant case. The Sixth Circuit held in *Miggins* that a triggering event requiring "the delivery and acceptance by someone inside the residence" was satisfied when "the package was taken by someone who had been inside the residence just prior to its delivery." *Miggins*, 302 F.3d at 395. As in *Miggins*, the outcome in *Croom* appeals to common sense. In this case, the gap between what the triggering event required and what actually occurred is simply too wide to bridge—hand delivery to a specific individual cannot be accomplished by hand delivery to a completely different individual, no matter how you spin it. Second, *Croom* did not concern the suppression of evidence seized during an alleged unlawful search, but a § 1983 claim brought by a third party challenging her brief detention during a search. Finally, and most notably, the court in *Croom* did not consider the *Leon* good faith exception whatsoever in its analysis. For these reasons, the Court does not find *Croom* persuasive here.

The government also argues that because officers did not deliberately violate the terms of the warrant, their behavior is beyond reproach pursuant to the Supreme Court's decision in *Herring*. The government is incorrect, however, that the exclusionary rule requires deliberate behavior in order to suppress evidence. In *Herring*, the Court expressly held that the exclusionary rule's purpose is to "deter deliberate, ***reckless*, or *grossly negligent*** conduct ...." *Herring*, 555 U.S. 135, 144, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) (emphasis added). At least one court has noted, even in light of the Supreme Court's exacting standard in *Herring*:

> *Herring* instructs this Court to assess the culpability of law enforcement in any alleged Fourth Amendment violation. If an event needed to trigger an anticipatory warrant does not occur and yet law

enforcement officers execute a search anyway, the officers have failed to follow the parameters of the warrant and may have acted culpably in doing so.

*United States v. Eure*, 2016 WL 4059663, at *7 (E.D. Va. July 28, 2016). Accordingly, the Court must examine police conduct during the execution of the anticipatory warrant, and determine whether officers acted in a "deliberate, reckless, or grossly negligent" manner. *Herring*, 555 U.S. 135, 144, 129 S.Ct. 695.

Both Officer Brinkley and Officer Brewer testified at the hearing held in this matter before the Magistrate Judge. Although Officer Brinkley discovered the parcel at the FedEx facility, and Officer Warren drafted the supporting affidavit to the warrant, it was Officer Kyle Brewer who delivered the parcel to Defendant's home.[4] At the hearing, Officer Brewer gave the following testimony:

Q: Now, are you aware that the anticipatory search warrant has a triggering event of handing the package to Perkins?

A: I am.

Q: And did you know at the time?

A: No, I did not know that it said directly to Mr. Perkins.

. . .

Q: You testified that you did not know that the triggering event on the warrant was that the package—was that the package be delivered to Mr. Perkins. Is that correct?

A: Well, I knew there was a subsequent series of events, that that package has to be delivered to that said residence. I did not know that it said specifically William Perkins. You know, I knew that—I knew the address, I knew the location, I had a picture of the—of the location where it was to be delivered. But as far as Mr. Perkins himself actually getting the package, I did not know that, no.

. . .

Q: . . . [D]id you read the warrant[?]

. . .

A: I was briefed on the warrant. I did not read the warrant itself.

(Doc. 23 at 26). As demonstrated by his testimony, Officer Brewer was unaware that the triggering event required hand delivery to the Defendant. There is no indication in the record that Officer Brewer knew the requirements of the triggering event and then made a judgment call in good faith as to whether the events that actually transpired more or less qualified. It also appears that Officer Warren failed to advise the other officers participating in the search of the warrant's parameters. Thus, the question becomes whether ignorance of a search warrant's requirements can save its improper execution.

The Supreme Court's decision in *Herring* does not require sinister behavior, as the Government appears to suggest. As outlined above, the Court in *Herring* also prohibited "reckless" and "grossly negligent" police conduct. This Court finds that Warren's failure to advise the officers executing the warrant of its triggering event is fairly construed as reckless or grossly negligent. When a magistrate has determined that the existence of probable cause is contingent upon the occurrence of a specific event, it is more than reasonable to expect law enforcement officers to be apprised of such important instructions,

---

4. Officer Brinkley did not participate in the execution of the search warrant. (Doc. 23 at 13–14).

and to follow them. *See Groh v. Ramirez*, 540 U.S. 551, 563, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) ("It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted.").

Nothing in *Herring*, nor in *Leon* for that matter, suggests that police may ignore the terms of a search warrant and then later avoid accountability by claiming total ignorance of the warrant's contents. Consider the following scenario: a search warrant delineates a narrow scope for its execution, for instance, authority to search a particular room of a residence for a particular item, such as a stolen TV. The police officers do not read the warrant and remain unadvised of its limits. Upon execution, officers search beyond the room designated in the warrant, and sweep the entire residence. Officers also look inside drawers, open envelopes, and log on to the resident's computer to view various files—surely officers cannot later justify their actions by stating that they were simply unaware of the warrant's scope. *See United States v. Zimmerman*, 277 F.3d 426, 437–38 (3d Cir.2002) (citation omitted) ("When the Supreme Court announced the good faith exception in *Leon*, it weakened the exclusionary rule, but it did not eviscerate it. Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble.").

Under the government's logic, such conduct passes muster, but the Court finds this rationale far from persuasive, and notes that other courts have concluded the same.[5] *United States v. Angelos*, 433 F.3d 738, 746 (10th Cir. 2006) ("[E]ither [police] knew the limits of the warrant and decided to disregard them, or [they] never bothered to read the warrant itself .... Either

way, [defendant] argues, the officers are not entitled to rely on any type of good faith exception. We agree."); *United States v. Smith*, 2009 WL 1121107, at * 3 (W.D. Wash. Apr. 27, 2009) (finding *Leon* exception inapplicable where officers executing a warrant exceeded its scope); *United States v. Goad*, 2012 WL 4578866, at *4 (N.D. Okla, Oct. 2, 2012) ("The good faith exception to the exclusionary rule is intended to prevent the exclusion of evidence when a neutral third party has committed an error, but the good faith rule does not excuse police error in exceeding the scope of a search warrant or failing to comply with other terms of the warrant.").

Another troubling fact is that, according to Officer Brewer's testimony at the hearing, Officer Warren later participated in the search of Defendant's residence despite the triggering event failing to occur as required. (Doc. 16–2 at 28–29). On this basis, Officer Warren's conduct is arguably deliberate, as he had actual knowledge of the warrant's requirements but nonetheless disregarded them.

Finally, the government relies on the Supreme Court's balancing language in *Herring*, namely: "To the extent that application of the exclusionary rule could provide some incremental deterrent, that possible benefit must be weighted against its substantial social costs." 555 U.S. at 142, 129 S.Ct. 695. The government appears to insinuate that because the application of the exclusionary rule in this case would result in Defendant escaping criminal liability, the Court should rule in its favor. The trouble with this argument is that the same is true any time a defendant files a motion to suppress. As set forth above, the exclusionary rule was intended

---

**5.** To be clear, these cases involved officers exceeding the scope of the warrant and not the disregard of an anticipatory warrant's

triggering event. The Court believes, however, that the reasoning of these courts is readily applicable when applied to the instant case.

to deter police misconduct. *Davis*, 564 U.S. at 236, 131 S.Ct. 2419. The Court believes that the deliberate and reckless actions of law enforcement in this case warrant the suppression of evidence so as to prevent the same behavior from occurring again.

In sum, the Court finds that the government has failed to establish that the officers' conduct in executing the search falls under the *Leon* exception. On this ground, the Motion to Suppress will be **GRANTED.**

## IV. CONCLUSION

For the reasons stated herein, Defendant's objections to the report and recommendation (Doc. 27) are **SUSTAINED IN PART**, the Court **REJECTS IN PART** the legal conclusions in the Report and Recommendation (Doc. 26), and the Court **GRANTS** Defendant's Motion to Suppress (Doc. 16).

**SO ORDERED** this the 5th day of July, 2017.

