After a jury trial in Superior Court, the defendant was convicted of trafficking in cocaine weighing over 200 grams. On appeal, he claims error in the denial of: his pretrial motion to suppress certain evidence, his motions for a required finding of not guilty, and his request for a mistrial. The defendant also argues that the Commonwealth's closing argument was flawed in certain respects. Discerning no abuse of discretion or other reversible error of law, we affirm the conviction.
Background. There was little variance between the evidence admitted at the evidentiary hearing on the motion to suppress and that admitted at trial. We summarize that evidence based on the findings made by the motion judge, while noting additional evidence that emerged only at trial. Certain details are reserved for later discussion.
On December 6, 2012, a Federal postal inspector applied for a warrant to search a parcel mailed from Puerto Rico to the defendant's residence in New Bedford. In his affidavit in support of the application for the search warrant, the inspector averred that there was probable cause to believe that the parcel contained controlled substances. After a Federal magistrate judge issued the warrant, the inspector opened the parcel to reveal what appeared to be five kilograms of cocaine. At that time, the inspector contacted a State trooper, and they put in motion a controlled delivery of the parcel to the defendant on December 7, 2012.
In anticipation of the delivery, the trooper obtained two search warrants. The first allowed him to install a beeper in the parcel so that police could track its location and know whether it had been opened.[2] The second warrant was an anticipatory one, that is, one that "[took] effect at a specified future time and not on its issuance." Commonwealth v. Staines, 441 Mass. 521, 525 (2004). The anticipatory warrant authorized entry into the defendant's premises without announcement to search for "[a]ll controlled substances ..., specifically marijuana." It took effect upon the following occurrences: the acceptance of the parcel, the defendant's signature on the delivery receipt, and the taking of the parcel into his residence.[3]
After the two warrants were obtained and the beeper was installed inside the parcel, the Federal inspector made the controlled delivery, with the State police surveilling the defendant's residence. The inspector drove to the defendant's residence, saw the defendant across the street from his residence, and initiated a conversation with him. During that conversation, the defendant identified himself, informed the inspector that the parcel was for him, and signed for it. The defendant then carried the parcel into his apartment building.
Approximately twenty minutes after the delivery, the defendant exited his apartment and walked toward his vehicle. At that point, the beeper inside the package had not signaled that the package had been opened. Nevertheless, fearful that the defendant could be hiding cocaine inside the "puffy jacket" he was wearing, the police decided "to move in." While one set of troopers detained the defendant and searched him, another entered his apartment and froze the scene there.[4] Based on the anticipatory search warrant, the police retrieved the package containing the cocaine from the closet of a bedroom used by the defendant. After the scene was frozen, the trooper obtained yet another warrant to search the defendant's apartment for "[a]ll controlled substances ..., specifically Marijuana," and items related to the manufacturing and distribution of narcotics. Pursuant to that warrant, the following additional items were found inside the apartment: a digital scale, approximately $29,000 in cash, ammunition, and a clear plastic baggie containing a white powdery substance.[5] The police arrested the defendant and the three individuals found in his apartment.
Discussion. Motion to suppress. The defendant argues that the motion judge erred in denying the motion to suppress, because the police entered the apartment and retrieved the package containing the cocaine without waiting for the conditions precedent included in the anticipatory search warrant to be satisfied. In addition, the defendant argues that the anticipatory warrant and the additional search warrant violated the particularity requirement, because on their face they authorized a search for marijuana, while police had no probable cause to believe that there was marijuana in the defendant's apartment.
"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of his ultimate findings and conclusions of law.' " Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting from Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). In this case, the motion judge correctly concluded that the police did not violate the anticipatory warrant.
As noted, the anticipatory warrant listed only three conditions precedent, all of which unquestionably had been satisfied by the time the police entered the apartment: the acceptance of the parcel, the defendant's signature on the delivery receipt, and the taking of the parcel into the defendant's residence. Nor did the affidavit submitted in support of that warrant set forth any additional conditions precedent. With the only conditions precedent set forth in the application for the search warrant and the search warrant itself fully having been satisfied, there was no violation here.
Although "[t]he triggering event [in an anticipatory warrant] must be 'clearly and narrowly defined,' " Commonwealth v. Celestino, 47 Mass. App. Ct. 916, 917 (1999), quoting from Commonwealth v. Gauthier, 425 Mass. 37, 43 (1997), the defendant argues that an additional condition precedent can and should be inferred. That condition precedent is that the police could not execute the warrant until either thirty minutes had elapsed from the time the package entered the apartment, or the beeper had signaled that the package had been opened. As noted earlier, see note 1, supra, while this additional condition precedent is not mentioned in either the anticipatory warrant or in the application for it, it was mentioned in the application for the separate but related warrant for the placement of the beeper inside of the package. Moreover, as the Commonwealth acknowledges, the trooper who executed the anticipatory warrant himself viewed this additional condition precedent as applying to the execution of that warrant.
Notwithstanding the trooper's understanding, we have at least significant doubt about whether having to wait the full period (that is, until either thirty minutes had elapsed or the beeper had sounded), should properly be viewed as a condition precedent to the execution of the anticipatory search warrant. In other words, this is not a case where "the occurrence of the 'so-called triggering condition' specified in the affidavit [was] necessary to establish probable cause and therefore [was] a condition precedent to the execution of the warrant."[6] Commonwealth v. Colondres, 471 Mass. 192, 197 (2015). There plainly was probable cause regardless of whether the police waited the additional time. In any event, we agree with the Commonwealth that even if the police having to wait the full period were seen as an additional condition precedent, the entry into the apartment and limited initial search would not thereby be rendered invalid. As noted, the police decided to "move in" only in reaction to the defendant's unexpectedly leaving the apartment in his "puffy jacket" before the full period had elapsed. In these circumstances, there was "equivalent compliance" between the triggering conditions and the events that transpired at the scene. Id. at 198 ("[T]he execution of a search is authorized by an anticipatory search warrant once there is equivalent compliance, albeit not strict compliance, with the triggering conditions in the affidavit").[7]
The motion judge likewise correctly ruled that the anticipatory warrant and the search warrant did not violate the particularity requirement. Both warrants authorized searches for "all controlled substances ... in violation of [G. L. c. 94C]," which includes cocaine. The language "specifically marijuana," on which the defendant relies, does not render the general language of the warrant inoperable, because the general and specific language are not mutually exclusive. In addition, even if we were to conclude that the specific language of the warrants rendered the general language of the warrants inoperable, there still would be no violation of the defendant's rights. It is well established that a "[technical] defect in the warrant [that] did not lead to a general search of the premises ... [because] the police ... believed that their authority to search was limited in scope to those items set forth in the affidavit ... [and] in no way exploited, or attempted to exploit, the illegality of the warrant" does not violate the Constitutional and statutory restrictions. Commonwealth v. Sheppard, 394 Mass. 381, 390 (1985). Here, the police searched the defendant's apartment for the cocaine mentioned in the affidavit and "[t]he search was conducted in the same way and with the same results as it would have been conducted if the warrant had not been defective." Ibid. (quotation omitted). The motion judge's ruling that there was no violation of the particularity requirement is correct.
Mistrial. The inspector who made the controlled delivery of cocaine testified at trial. The defense counsel cross-examined him on, among other topics, the identity of the person who sent the package to the defendant. At one point, defense counsel asked the prosecutor at sidebar whether the Commonwealth had information about the identity of the sender of the package. The prosecutor responded that there were "suspicions as to who it [was,] but [they had] never been confirmed." Following that response, counsel asked the inspector whether "there was [any] connection made between [her client and] that individual [who shipped the parcel, which was found in her client's apartment, from Puerto Rico to her] client." The inspector responded, "I believe[ ] there was." Evidently surprised by the witness's response in light of the prosecutor's answer to her earlier question, counsel asked to be heard at sidebar. The trial judge allowed defense counsel to conduct a voir dire of the inspector. In that voir dire, the inspector clarified that, in his view, the sender of the package-whose image was captured in a video recording made at the post office in Puerto Rico-bore some resemblance to one of the other occupants of the defendant's apartment, and that therefore there was a "possib[ility]" that the two people were the same.
At the conclusion of the voir dire, the trial judge inquired of defense counsel how she wished to proceed. The trial judge specifically indicated her willingness to strike the inspector's earlier testimony that he believed there was a connection between the two people in lieu of counsel's having the inspector clarify his testimony during further cross-examination. Instead, counsel requested a mistrial based on the theory that the Commonwealth had committed a discovery violation. In fact, counsel even went so far as to argue that the trial judge should dismiss the case. The trial judge denied these oral requests but offered to give counsel the weekend to decide how she wanted to proceed.[8] Counsel rejected that offer and renewed her cross-examination of the inspector, who clarified that he merely had a "suspicion" about the identity of the sender of the parcel.
"The denial of a motion for mistrial is reviewed for abuse of discretion." Commonwealth v. Santana, 477 Mass. 610, 625 (2017). The defendant cannot come close to demonstrating an abuse of discretion here.
As an initial matter, we note that the Commonwealth had provided the defendant a copy of the video recording of the sender of the package. In addition, the defendant was well aware of what the other occupants of his apartment looked like, and was provided with a booking photograph of the relevant person arrested there. Thus, defense counsel had the very same underlying data about the possible identity of the sender as the Commonwealth possessed. The only information the defendant was not provided was that the inspector saw a resemblance between the two people. The Commonwealth itself could not have admitted in evidence that the inspector saw that resemblance-see Commonwealth v. Austin, 421 Mass. 357, 366 (1995) -and the defendant has not demonstrated how the Commonwealth violated any discovery obligations in not disclosing the inspector's belief. This is not a case where there was a surprise midtrial disclosure of evidence. Contrast Commonwealth v. Ellison, 376 Mass. 1, 25 (1978) ("The prosecutor's late, piecemeal, and incomplete disclosures forced on defense counsel the necessity of making difficult tactical decisions quickly in the heat of trial").
Furthermore, the defendant has not established how he was prejudiced by the inspector's testimony. In fact, as the trial judge correctly observed, any suggestion from the inspector's testimony that the package was sent from one of the others found in his apartment actually might have strengthened his defense. Indeed, defense counsel argued in her opening statement that three people "purposeful[ly] ... arrive[d]" to the defendant's apartment "just in time for the package."[9]
Finally, to the extent the inspector's testimony surprised the defense counsel, the trial judge offered several measures to address this, including striking that testimony, and letting counsel ponder the matter further over the weekend. Defense counsel instead chose to continue with her cross-examination (through which the inspector clarified the limited nature of his earlier statement). In these circumstances, the trial judge did not abuse her broad discretion in refusing to declare a mistrial. Commonwealth v. Thomas, 429 Mass. 146, 157 (1999). Ipso facto, the trial judge did not err in declining to dismiss the indictment. See Commonwealth v. Lam Hue To, 391 Mass. 301, 314 (1984) (dismissal of indictment is "a drastic remedy [that] would be appropriate where failure to comply with discovery procedures results in irremediable harm to a defendant that prevents the possibility of a fair trial").
Motions for required finding of not guilty. The defendant moved for a required finding of not guilty at the close of the Commonwealth's case and at the close of the evidence. On appeal, he argues that the denial of these motions was error because there was insufficient evidence that he knowingly and intentionally possessed the cocaine.
In a challenge to the sufficiency of the evidence, we examine whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 443 U.S. 307, 319 (1979). Measured by that standard, the evidence here plainly was sufficient to support the conviction. Based on the evidence, and the reasonable inferences drawn therefrom, rational jurors could have concluded that the defendant accepted a package of cocaine, which was addressed to the defendant, took it into his apartment, and placed it into his bedroom closet. In addition, items associated with the drug trade (a digital scale, approximately $29,000 in cash, acetone used to purify cocaine, and a clear plastic baggie with white substance in it) were found in the defendant's apartment. Based on the evidence, the jury reasonably could conclude that the defendant knew that the parcel contained cocaine and that he intended to possess it. See Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 410-411 (2013) (Kafker, J.) (proof of possession of narcotics can be established by circumstantial evidence), and cases cited.
Commonwealth's closing argument. The defendant argues that four statements that the prosecutor made in his closing argument were unsupported by the evidence. He principally challenges the statement that the defendant put the parcel containing the cocaine into his bedroom closet. That statement was a reasonable inference from the evidence, and therefore there was no error in the prosecutor's making it. See Commonwealth v. Kozec, 399 Mass. 514, 516 (1987) ("We have never criticized a prosecutor for arguing forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence"). Nevertheless, after the defendant lodged a contemporaneous objection to the statement, the trial judge instructed the jury to disregard it. In this manner, the trial judge gave the defendant more than he was entitled to.
The prosecutor also stated (or suggested) in his closing argument that the defendant lived on the third floor, that he was a "trusted employee," and that he did not telephone the police after receiving the parcel. Upon the defendant's objections, the trial judge forcefully instructed the jury to disregard these statements. "Because the claims of error were preserved, we review [the prosecutor's remarks] to determine whether [they] were improper and, if so, whether any improprieties were prejudicial." Commonwealth v. Tu Trinh, 458 Mass. 776, 785 (2011). In doing so, "[w]e analyze the defendant's claim [about impropriety of the closing argument] in light of the entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial." Ibid. (quotations omitted).
Any prejudice to the defendant from the prosecutor's overstatements was cured by the trial judge's instructions. See Commonwealth v. Donahue, 430 Mass. 710, 718 (2000) ("We presume that a jury understand and follow limiting instructions ..."). Moreover, the evidence against the defendant was strong. To the extent that the prosecutor may have overstated the evidence in part, this does not require reversal of his conviction.
Judgment affirmed.

In his affidavit in support of the application for a warrant regarding the beeper, the trooper also referenced another triggering event. Specifically, the affidavit noted his intention to enter and search the defendant's residence only after either the beeper inside the parcel had signaled that the package had been opened, or thirty minutes had elapsed from the time of delivery.

Although the application for the anticipatory warrant is dated as of December 7, 2012, the motion judge found that the trooper applied for it on December 6, 2012.

In the apartment, the police found three other individuals.

There was testimony at trial that the apartment was not searched until after the additional search warrant was obtained, thus suggesting that the package containing the cocaine was not actually retrieved until the additional search warrant was in hand. However, the motion judge found that the package was retrieved based on the anticipatory warrant, and we accept that premise in analyzing the denial of the motion to suppress. See Commonwealth v. Grandison, 433 Mass. 135, 137 (2001), quoting from Commonwealth v. Garcia, 34 Mass. App. Ct. 386, 391-392 (1993) ("[I]n reviewing a judge's ruling on a motion to suppress, an appellate court 'may not rely on the facts as developed at trial' even where the testimony differed materially from that given at trial").

The trooper testified at the motion hearing that the reason he included the thirty-minute time period condition into his affidavit was that the Commonwealth "wanted to make sure that there was enough allotted time within the warrant itself in case somebody showed up that [the police would] be able to handle that situation."

"In determining whether there has been equivalent compliance, we look to the inference that would have been drawn had the triggering conditions stated in the affidavit occurred ... and determine whether the weight of that inference is as strong or stronger under the actual conditions." Colondres, supra at 198.

This exchange occurred on a Thursday morning. The trial was scheduled to continue on Monday and Tuesday of the next week.

Notably, the defendant has vacillated between arguing that his case ultimately was helped or hurt by the possibility that the package was mailed by someone who was present in the apartment when it arrived.